# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2578 |
| COMPLETE TITLE: | Sonja Blake,<br>       Plaintiff-Appellant-Petitioner,<br>  v.<br>Debra Jossart, Kerry Milkie and Racine County<br>Human Services Department,<br>       Defendants,<br>Department of Children and Families and Eloise<br>Anderson,<br>       Defendants-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 364 Wis. 2d 526, 868 N.W.2d 198)
(Ct. App. 2015 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 6, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 24, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Shelley J. Gaylord |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, J. and BRADLEY, A. W., J. dissent<br>(Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-appellant-petitioner, there were briefs by *Sheila Sullivan*, *Jill M. Kastner*, and *Legal Action of Wisconsin, Inc.*, Milwaukee, and oral argument by *Sheila Sullivan*.

    For the defendants-respondents, the cause was argued by *Maura F.J. Whelan*, assistant attorney general with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2578
(L.C. No. 2010CV1048)

STATE OF WISCONSIN      :      IN SUPREME COURT

**Sonja Blake,**

      **Plaintiff-Appellant-Petitioner,**

   **v.**

**Debra Jossart, Kerry Milkie and Racine County Human Services Department,**

      **Defendants,**

**Department of Children and Families and Eloise Anderson,**

      **Defendants-Respondents.**

**FILED**

**JUL 6, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals affirming a circuit court order rejecting constitutional challenges to Wis. Stat. § 48.685(5)(br)5. (2013-14).[1]

---

[1] Blake v. Jossart, No. 2012AP2578, unpublished slip op. (Wis. Ct. App. June 11, 2015) (per curiam).

(continued)

¶2 In late 2009 the Wisconsin Legislature approved 2009 Wis. Act 76, which substantially changed the circumstances under which the Department of Children and Families (DCF) may license and certify childcare providers in Wisconsin. One provision in the new law, Wis. Stat. § 48.685(5)(br)5., "imposes a lifetime ban on licensure" and certification for persons who have been convicted of specific crimes. Jamerson v. DCF, 2013 WI 7, ¶2, 345 Wis. 2d 205, 824 N.W.2d 822.

¶3 After the Act took effect, the Racine County Human Services Department (Racine County) revoked the childcare certification previously issued to Sonja Blake (Blake) because she had a 1986 conviction for misdemeanor welfare fraud. Under Wis. Stat. § 48.685(5)(br)5., the 1986 conviction made Blake ineligible for certification. Blake raised various constitutional challenges to the statute in the Dane County Circuit Court and in the court of appeals. She did not prevail.

¶4 Before this court, Blake renews the three constitutional arguments she raised in the courts below. First, she contends that the lifetime prohibition on certification creates an arbitrary and irrational classification that denies her equal protection of the law. Second, she claims that the prohibition deprives her of a liberty interest by abridging an alleged substantive due process right to practice her chosen profession as a state-regulated childcare provider. Finally,

---

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

2

she argues that the prohibition creates an "impermissible irrebuttable presumption." For the reasons discussed below, we disagree with each of her arguments and affirm the decision of the court of appeals.

## I. BACKGROUND

### A. The Children's Code and 2009 Wis. Act. 76

¶5 DCF licenses childcare centers and certifies childcare providers under Chapter 48 of the Wisconsin Statutes.[2] "To obtain a license . . . to operate a child care center, a person must . . . meet the requirements specified in s. 48.685."[3] To receive certification as a childcare provider, a person must, among other prerequisites, "meet the minimum requirements for certification established by the department under s. 49.155(1d)" and "meet the requirements specified in s. 48.685."[4]

¶6 A person need not obtain a license to operate a childcare center if the center provides care and supervision for less than 4 children under the age of 7.[5] However, only a licensed childcare center or a person with a childcare

---

[2] See Wis. Stat. §§ 48.65, 48.651.

[3] Wis. Stat. § 48.65(1) ("A license . . . is valid until revoked or suspended, but shall be reviewed every 2 years . . . .").

[4] Wis. Stat. § 48.651(1).

[5] See Wis. Stat. § 48.65(1) ("No person may for compensation provide care and supervision for 4 or more children under the age of 7 for less than 24 hours a day unless that person obtains a license to operate a child care center from the department.").

3

certification "may receive payment for providing child care services for an individual who is determined eligible for a child care subsidy under s. 49.155."[6]

¶7    The Wisconsin Shares program detailed in Wis. Stat. § 49.155 provides subsidies to families meeting certain financial eligibility requirements.  These subsidies eventually reach childcare centers and childcare providers, so long as they are licensed or certified.[7]    To acquire a license or certification, a person must meet the requirements set forth in Wis. Stat. § 48.685.  If a person fails to obtain a license or certification because the person is ineligible under § 48.685, the person is ineligible to receive Wisconsin Shares dollars.

¶8   Wisconsin Stat. § 48.685 provides for an extensive search of childcare providers' backgrounds for any record of criminal history or child abuse.  The section places a lifetime prohibition on licensure or certification for people with certain criminal convictions on their records, as subdivision 5., at issue in this case, demonstrates:

---

[6] Wis. Stat. § 48.651(1) ("[N]o person, other than a child care center licensed under s. 48.65 . . . , may receive payment for providing child care services for an individual who is determined eligible for a child care subsidy under s. 49.155 unless the person is certified . . . .").

[7] DCF provides vouchers to Wisconsin Shares-eligible parents, and parents use the vouchers to "obtain child care services stipulated in that voucher from [an authorized] provider."  Wis. Admin. Code § DCF 201.04(2)(a) (Feb. 2016). Authorized childcare providers accept the vouchers and receive payment from DCF.  Wis. Admin. Code § DCF 201(1), (2g) (Feb. 2016).

4

(br) For purposes of licensing a person to operate a child care center under s. 48.65[ or] certifying a child care provider under s. 48.651, . . . no person who has been convicted or adjudicated delinquent on or after his or her 12th birthday for committing any of the following offenses . . . may be permitted to demonstrate that he or she has been rehabilitated:

. . . .

5. An offense involving fraudulent activity as a participant in the Wisconsin Works program under ss. 49.141 to 49.161, including as a recipient of a child care subsidy under s. 49.155, or as a recipient of aid to families with dependent children under s. 49.19, medical assistance under subch. IV of ch. 49, food stamps benefits under the food stamp program under 7 USC 2011 to 2036, supplemental security income payments under s. 49.77, payments for the support of children of supplemental security income recipients under s. 49.775, or health care benefits under the Badger Care health care program under s. 49.665.[8]

¶9 Subdivisions 6. and 7. prohibit licensure and certification based on convictions for other offenses, but the prohibitions apply only "if the person completed his or her sentence, including any probation, parole, or extended supervision, or was discharged by the department of corrections, less than 5 years before the date" of the background check.[9]

¶10 These lifetime and five-year prohibitions on eligibility under Wis. Stat. § 48.685(5)(br) stand in contrast to the prohibitions listed in § 48.685(4m)(a)-(b). Although § 48.685(4m)(a) and (b) also disqualify from licensure or

---

[8] Wis. Stat. § 48.685(5)(br)5.

[9] Wis. Stat. § 48.685(5)(br)6.-7.

5

certification people with certain criminal convictions, § 48.685(5)(a) allows for licensure or certification notwithstanding prior conviction "if the person demonstrates to the department . . . by clear and convincing evidence . . . that he or she has been rehabilitated."

¶11 The legislature created the paragraph (br) prohibitions in Section 24 of 2009 Wis. Act. 76, which followed a series of articles in the Milwaukee Journal Sentinel detailing extensive fraud and abuse by childcare providers receiving funds through Wisconsin Shares.[10] Prior to Act 76, the law contained a rebuttable presumption of ineligibility for licensure or certification if a person had a specified criminal conviction, but it did not permanently bar people from eligibility based on any prior conviction.[11]

### B. Blake's Childcare Certification

¶12 Blake received her childcare provider certification from Racine County in October 2001. She then began operating a childcare business from her own home. Starting with her eldest daughter's two children, Blake soon grew her childcare business into caring for the children of her daughter's and her son's friends. By 2006 Blake provided childcare for approximately 12

---

[10] To access a collected archive of the articles in the investigative series, for which reporter Raquel Rutledge won a Pulitzer Prize for Local Reporting, see Cashing in on Kids, Milwaukee J. Sentinel, http://www.jsonline.com/news/38617217.html (last visited June 24, 2016).

[11] See Wis. Stat. § 48.685(4m)-(5) (2007-08).

children, with about 4 to 6 children in her home at any one time.

¶13 Operating the childcare business became Blake's primary source of income. Rather than charging parents for her childcare services, Blake received Wisconsin Shares reimbursement payments from the Racine County Workforce Development Center because of her status as a certified provider. Funds from the Wisconsin Shares program represented Blake's sole source of income for her childcare services. During the period between 2001 and 2006, Blake estimated that she received payments totaling approximately $26,000 from Wisconsin Shares each year.

¶14 Racine County revoked Blake's childcare certification in 2006 for failure to disclose that her son lived in her home and failure to submit a form disclosing information about his background. Without a certification permitting her to receive payments from Wisconsin Shares-eligible parents, Blake stopped running her home childcare business. She worked full time as a caregiver in an assisted living home for adults while waiting to reapply for certification.

¶15 When she became eligible again in 2008, Blake reapplied for and received a new childcare certification. With a new certification valid from June 6, 2008, to June 6, 2010, Blake left her job at the assisted living home to restart her childcare business. Blake resumed providing care for approximately 12 different children at various times throughout the week. Over the ensuing year, however, nearly all the

7

children for whom Blake provided care began receiving childcare elsewhere, eventually leaving Blake with only 2 children. With business disappearing, Blake took a part-time job at a children's learning center in 2009.

¶16  In January 2010, Racine County notified Blake that it would permanently revoke her childcare certification, effective February 1, 2010.  To comply with Act 76's changes to the law regarding childcare certifications, the County had conducted a review of providers' criminal backgrounds to determine whether the new law affected any certified providers in the county.

¶17  Blake's background check revealed a 1986 conviction for public assistance fraud.  According to the Judgment of Conviction issued by the Racine County Circuit Court on December 19, 1986, Blake pled no contest to misdemeanor welfare fraud, contrary to Wis. Stat. § 49.12(9) (1983-84).  Blake pled to the misdemeanor after originally facing a felony charge for failing to report as assets a car and a motorcycle that she owned.  At the time, she thought she did not have to report the car as an asset because it was a gift and it did not run.  As a result of the conviction, she served two years probation and paid $294 in restitution for the excess welfare payment she received.

¶18  Racine County determined that, as a conviction related to public benefits fraud, her 1986 conviction fell within the category of offenses for which Act 76 required permanent

revocation under new Wis. Stat. § 48.685(5)(br)5.[12]    After the County revoked her certification, Blake again closed her home childcare business.    She also lost her job at the children's learning center upon informing her employer that the County revoked her certification.

## II.   PROCEDURAL HISTORY

¶19 Blake commenced this action on March 1, 2010, to challenge revocation of her childcare certification.    She claimed under 42 U.S.C. § 1983 that revocation of her certification interfered with rights secured by the United States Constitution.[13]    She sought a declaratory judgment holding

---

[12] An email dated February 3, 2010, from DCF to certifying agents in Racine, Marathon, and Eau Claire Counties explained that not all convictions under Chapter 49 automatically qualify for permanent revocation as "[a]n offense involving fraudulent activity" under Wis. Stat. § 48.685(5)(br)5.    The email provided the following guidance:

> To determine whether a conviction under ch. 49 is fraudulent, first look at the actual conviction.    Was the person convicted of "fraud".    If the title of the conviction includes, fraud, then it would be a permanent bar.    However, if the title of the conviction does not include the word "fraud" then the facts of the conviction need to be examined.

[13] Initially, Blake also claimed that Racine County and DCF violated due process by revoking her certification without conducting an administrative hearing.    After Blake filed her complaint, Racine County allowed her an administrative hearing on the revocation.    A hearing examiner determined that her 1986 conviction provided grounds for revocation, and the circuit court upheld that decision.    But the court of appeals reversed, concluding that Racine County considered insufficient evidence to conclusively determine that Blake's conviction was an offense involving fraudulent activity.    Blake v. Racine Cty. Human Servs. Dep't, 2013 WI App 45, ¶¶1-2, 347 Wis. 2d 499, 831

(continued)

that Wis. Stat. § 48.685(5)(br)5. unconstitutionally violated her right to equal protection, violated her right to due process, and created an impermissible irrebuttable presumption. She argued that, facially and as applied to her, the statute's new list of disqualifying offenses denied her constitutional rights by completely barring her from eligibility for licensure or certification.

¶20 Both parties filed for summary judgment, and the Dane County Circuit Court[14] rejected Blake's constitutional challenges. Disposing of Blake's facial challenge to the Wis. Stat. § 48.685(5)(br)5. prohibition on certification, the circuit court relied on Brown v. State Department of Children and Families, 2012 WI App 61, 341 Wis. 2d 449, 819 N.W.2d 827, in which the court of appeals determined that the new caregiver law passed the rational basis test and did not, on its face, violate the equal protection guarantee. In particular, the circuit court relied on Brown's reasoning that the law "serves a legitimate purpose of preventing further fraud in the Wisconsin Shares program" and that "the legislature did not apply an irrational or arbitrary classification in passing the law."

---

N.W.2d 439 (citing Jamerson v. DCF, 2013 WI 7, ¶72, 345 Wis. 2d 205, 824 N.W.2d 822). On remand, Racine County presented additional evidence and once again upheld revocation; both the circuit court and the court of appeals affirmed. Blake v. Racine Cty. Human Servs. Dep't, No. 2014AP1229-FT, unpublished order (Wis. Ct. App. Oct. 8, 2014).

[14] Shelley J. Gaylord, Judge.

¶21 The circuit court further concluded that Blake failed to demonstrate that Wis. Stat. § 48.685(5)(br)5. was unconstitutional as applied to her. Again relying on Brown, the court first concluded that Blake overstated her liberty interest by asserting a right to provide subsidized childcare. Rather, the court asked whether Wis. Stat. § 48.685(5)(br)5. denied Blake the opportunity to make a living in childcare in general— and the court answered that it did not. The circuit court observed that, to prevail on her as-applied challenge, Blake would need to provide facts supporting her claim that the statute constituted a de facto deprivation of her ability to provide childcare. She failed to make that showing. Indeed, the court said, Blake's efforts to continue working in childcare after loss of her certification had "been nil or virtually nil."

¶22 Blake appealed, and the court of appeals affirmed. Blake v. Jossart, No. 2012AP2578, unpublished slip op. (Wis. Ct. App. June 11, 2015) (per curiam). First, the court of appeals declined to address Blake's facial equal protection challenge because, as Blake acknowledged in a footnote of her brief, Brown controlled on that issue and the court of appeals could not overrule its own decision. Id., ¶3. The court also declined to consider her as-applied equal protection argument, reasoning that she had failed to cite "any case law or legal standard relevant to such an analysis." Id., ¶4.

¶23 Next, the court turned to Blake's claim that Act 76 created an impermissible irrebuttable presumption that individuals convicted of an offense involving fraudulent

11

activity are permanently unfit for certification.  Id., ¶¶5-6. Appreciating Blake's "acknowledge[ment] that the current vitality of the irrebuttable presumption concept is questionable," the court of appeals found her argument unpersuasive because she did "not cite any case law in which an occupational-regulation statute such as this one ha[d] been held unconstitutional for relying on such a presumption." Id., ¶6.

¶24 Finally, to consider Blake's substantive due process argument, the court of appeals assumed that Blake had a constitutionally protected liberty interest in working in "the field of state-regulated child care." Id., ¶¶7-9. Turning again to Brown, the court of appeals concluded that "barring persons convicted of 'crimes involving fraudulent use of funds from enumerated government programs is rationally related to a legitimate interest in preventing further fraud' to the child care subsidy program." Id., ¶9 (citing Brown, 341 Wis. 2d 449, ¶40). Blake failed to demonstrate that "this relationship becomes irrational or arbitrary" when the individual's past offense "was a de minimis example of fraudulent activity." Id.

¶25 On July 29, 2015, Blake filed a petition for review, which this court granted on November 4, 2015.

### III. STANDARD OF REVIEW

¶26 A statute's constitutionality is a question of law that this court reviews de novo. Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶18, 237 Wis. 2d 99, 613 N.W.2d 849 (citing Riccitelli v. Broekhuizen, 227 Wis. 2d. 100, 119, 595 N.W.2d 392 (1999)). To succeed on a claim that a law

12

is unconstitutional on its face, the challenger must demonstrate that the State cannot enforce the law under any circumstances. State v. Wood, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63 (citing Olson v. Town of Cottage Grove, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211). If the challenger succeeds, then the law is void for all purposes. Id. (citing State ex rel. Comm'rs of Pub. Lands v. Anderson, 56 Wis. 2d 666, 672, 203 N.W.2d 84 (1973)). An as-applied challenge, in contrast, focuses on the facts of the challenger's case, and if the court determines that the law actually violates the challenger's rights, then "the operation of the law is void as to the party asserting the claim." Id. (first citing State v. Hamdan, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785; then citing Anderson, 56 Wis. 2d at 672).

¶27 We presume that statutes are constitutional, Wood, 323 Wis. 2d 321, ¶15, and if any doubt exists about the statute's constitutionality, the court must resolve that doubt in favor of upholding the statute, Aicher, 237 Wis. 2d 99, ¶18 (citing State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46–47, 205 N.W.2d 784 (1973)). A party challenging a statute overcomes the strong presumption of constitutionality only by demonstrating that the statute is unconstitutional beyond a reasonable doubt. Id., ¶19 (citing State v. Hezzie R., 219 Wis. 2d 848, 863, 580 N.W.2d 660 (1998)). "It is not sufficient for the challenging party merely to establish doubt about a statute's constitutionality, and it is not enough to establish

that a statute probably is unconstitutional."    Id.    (citing Hammermill Paper Co., 58 Wis. 2d at 46-47).

### IV.   DISCUSSION

¶28 According to the Fourteenth Amendment to the United States Constitution, "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   Article I, Section 1 of the Wisconsin Constitution further provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness . . . ."   As a general principle, this court treats these provisions of the United States and Wisconsin Constitutions as consistent with each other in their due process and equal protection guarantees.[15]

¶29 Blake raises three constitutional challenges to the absolute bar on childcare licensure and certification for people convicted of certain criminal offenses, as provided by Wis. Stat. § 48.685(5)(br)5.   She argues that revocation of her

---

[15] See Winnebago Cty. v. Christopher S., 2016 WI 1, ¶35 n.18, 366 Wis. 2d 1, 878 N.W.2d 109 ("[T]he United States Constitution and the Wisconsin Constitution provide substantively similar due process guarantees." (citing State v. Wood, 2010 WI 17, ¶17 n.9, 323 Wis. 2d 321, 780 N.W.2d 63)); Tomczak v. Bailey, 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998) ("This court applies the same interpretation to the state Equal Protection Clause as that given to the equivalent federal provision." (citing State v. Post, 197 Wis. 2d 279, 317 n.21, 541 N.W.2d 115 (1995))).

14

certification under this statute (1) denies her equal protection of the law, (2) violates her right to due process, and (3) creates an impermissible irrebuttable presumption.  We consider each of these three arguments in turn.

### A.  Equal Protection

¶30  To show that a statute unconstitutionally denies equal protection of the law, a party must demonstrate that the statute treats members of similarly situated classes differently. Tomczak v. Bailey, 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998). "The right to equal protection does not require that such similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made."  State v. West, 2011 WI 83, ¶90, 336 Wis. 2d 578, 800 N.W.2d 929 (citing State v. Post, 197 Wis. 2d 279, 321, 541 N.W.2d 115 (1995)).

¶31  "In cases where a statutory classification does not involve a suspect class or a fundamental interest, the classification will be upheld if there is any rational basis to support it."  State v. Burgess, 2003 WI 71, ¶10, 262 Wis. 2d 354, 665 N.W.2d 124 (citing Milwaukee Brewers v. DHSS, 130 Wis. 2d 79, 98, 387 N.W.2d 254 (1986)).  Only when a statute "impinges on a 'fundamental right' or creates a classification that 'operates to the peculiar disadvantage of a suspect class'" will the court engage in strict scrutiny analysis.  Aicher, 237 Wis. 2d 99, ¶56 (quoting Tomczak, 218 Wis. 2d at 261-62).

15

¶32 Under rational basis analysis, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when enacting the provision. Burgess, 262 Wis. 2d 354, ¶32; Aicher, 237 Wis. 2d 99, ¶57. Therefore, the court will uphold a statute unless "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Aicher, 237 Wis. 2d 99, ¶57 (quoting Tomczak, 218 Wis. 2d at 264). Though classifications may be imperfect and might create inequities, the court seeks to determine whether a classification rationally advances a legislative objective. Id. To do so, the court must identify or, if necessary, construct a rationale supporting the legislature's determination. Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶62, 332 Wis. 2d 85, 796 N.W. 2d 717. "Once the court identifies a rational basis for a statute, the court must assume the legislature passed the act on that basis . . . ." Ferdon ex rel. Petrucelli v. Wis. Patients Comp. Fund, 2005 WI 125, ¶75, 284 Wis. 2d 573, 701 N.W.2d 440.[16]

---

[16] The dissent reminds us of the admonition from the Supreme Court of the United States that the "rational-basis standard is 'not a toothless one.'" Schweiker v. Wilson, 450 U.S. 221, 234 (1981) (quoting Matthews v. Lucas, 427 U.S. 495, 510 (1976)), quoted in dissent, ¶69. However, rational basis review does not "allow us to substitute our personal notions of good public policy for those of" the legislature. See Schweiker, 450 U.S. at 234. As the Supreme Court has explained,

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable

(continued)

16

¶33  A legislative classification satisfies the rational basis standard if it meets the following five criteria:

(1)  All classification[s] must be based upon substantial distinctions which make one class really different from another.

(2)  The classification adopted must be germane to the purpose of the law.

(3)  The classification must not be based upon existing circumstances only.  [It must not be so constituted as to preclude addition to the numbers included within a class.]

(4)  To whatever class a law may apply, it must apply equally to each member thereof.

(5)  That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety,

---

basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78.  "The problems of government are practical ones and may justify, if they do not require, rough accommodations——illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70.  "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426.

Dandridge v. Williams, 397 U.S. 471, 485 (1970).  The dissent identifies alternative means by which the legislature might have structured the law to prevent fraud against Wisconsin Shares. See, e.g., dissent, ¶¶88-91.  But the mere existence of alternative policy proposals does not negate the rational relationship between the objective of preventing fraud and the legislature's chosen policy of prohibiting licensure for anyone with a conviction for fraud against a government benefits program.

having regard to the public good, of substantially different legislation.

*Aicher*, 237 Wis. 2d 99, ¶58 (alterations in original) (quoting *Tomczak*, 218 Wis. 2d at 272-73); *accord* *Metro. Assocs.*, 332 Wis. 2d 85, ¶64; *Nankin v. Village of Shorewood*, 2001 WI 92, ¶39, 245 Wis. 2d 86, 630 N.W.2d 141.

¶34 Blake concedes that her equal protection claim involves neither a suspect class nor a fundamental right; therefore, rational basis analysis is appropriate in this case. She characterizes Act 76 as creating three classes of people with prior convictions: (1) people permanently barred for life from eligibility for licensure or certification; (2) people absolutely barred from eligibility for five years, after which time they remain barred but may prove rehabilitation; and (3) people presumptively barred for life but eligible to prove rehabilitation. These classifications deny her equal protection, she argues, because they are incoherent and lack distinguishing features. Depending on the offense committed, a person convicted of a crime of violence, a crime against children, or a dishonesty-related offense might fall into any of the three classifications, which do not necessarily match the severity of the underlying offense.

¶35 DCF counters that the appropriate class to focus on "consists of persons like Blake who have been convicted of 'an offense involving fraudulent activity as a participant' in specified public benefits programs." That classification rationally achieves the legislature's objective of "the

18

elimination of fraud in the Wisconsin Shares program and the protection of the public's scarce financial resources."

¶36 In Brown, the court of appeals rejected facial and as-applied challenges to Wis. Stat. § 48.685(5)(br)5. that relied on equal protection grounds. Brown, 341 Wis. 2d 449, ¶¶40, 43. Also applying rational basis analysis, the court of appeals first reasoned that the challenger had not demonstrated facial unconstitutionality because, "[r]egardless of whether the law is rationally related to the goal of protecting children, the law is rationally related to the legitimate purpose of prohibiting individuals who dishonestly benefitted from government welfare in the past from obtaining government funding in the form of childcare subsidies." Id., ¶40. Turning to the as-applied argument, the court of appeals acknowledged that "Brown's particular situation——[loss of certification because she had] a single welfare conviction for events occurring more than two decades ago——[was] unfortunate," but the court declined to hold the statute unconstitutional as applied because Brown "point[ed] to no evidence that she was treated differently from any similarly-situated childcare provider whose license was revoked under the new law." Id., ¶43.

¶37 Examining Blake's facial challenge, we conclude that Wis. Stat. § 48.685(5)(br)5. passes rational basis review on its face. We begin our analysis by noting the legislature's organizational structure for paragraph (br), which sets forth seven subdivisions defining categories of people barred from licensure and certification. The class we evaluate for equal

19

protection purposes consists of people permanently ineligible for licensure or certification on the grounds that their record contains a conviction for "[a]n offense involving fraudulent activity as a participant" in one of the various government benefits programs delineated in subdivision 5.

¶38 The classification satisfies the first of the five Aicher prongs if "substantial distinctions" demonstrate that the class is truly different from others. Aicher, 237 Wis. 2d 99, ¶58. Subdivision 5. contains a comprehensive list of public benefits programs and disqualifies from eligibility people who have convictions for fraudulent activity pertaining to one or more of these programs.

¶39 Other subdivisions under paragraph (br) create lifetime prohibitions for people with convictions for crimes against children, certain crimes against life and bodily security, and various crimes involving misappropriation of identity or property. See Wis. Stat. § 48.685(5)(br)1.-4. These subdivisions arguably have purposes different from subdivision 5., such as protecting children, protecting the families of children, and protecting private employers in childcare.

¶40 Subdivision 5. imposes ineligibility based on convictions for fraudulent activity related to public assistance programs, meaning that it focuses on a distinct category of criminal activity. Regardless of its merits, Blake's normative argument that the legislature could better achieve the objective of protecting children by developing classifications focused on

the severity of the underlying offense does not defeat the fact that the legislature did create a coherent, though broad, classification based on public benefits fraud convictions. Because subdivision 5. targets a cognizable group of individuals whose characteristics are distinct from other classifications in the statute, Wis. Stat. § 48.685(5)(br)5. meets the first prong.

¶41 Furthermore, Blake's three-tiered characterization of subsection (5)'s classifications does not disprove the existence of substantial distinctions between classes. Focusing on the impact that different convictions have on a person's eligibility, Blake argues that the legislature did not have a cogent justification for barring some people for life, allowing some people to overcome a lifetime prohibition by proving rehabilitation, and barring others for five years but permitting them to prove rehabilitation after that time. In particular, she observes that "[a]ll three classes include individuals convicted of crimes of violence, offenses against children, and dishonesty-related offenses." The legislature, however, could reasonably determine that creating different outcomes for people with different underlying convictions would most efficaciously advance the objective of preventing fraud against Wisconsin Shares. Because public benefits fraud is the particular type of fraud that the legislature sought to prevent, the legislature could reasonably determine that public benefits fraud offenses warranted a stricter prohibition than other underlying convictions.

21

¶42 To succeed under the second Aicher prong, Blake must prove that the classification is not germane to the law's purpose. See Aicher, 237 Wis. 2d 99, ¶58. She contends that barring eligibility under Wis. Stat. § 48.685(5)(br)5. "[f]or purposes of . . . permitting a person to be a . . . caregiver specified in sub. (1)(ag)1.a. of a child care center or child care provider" sweeps too broadly by prohibiting people with public assistance fraud convictions from working in any regulated facility——even those facilities that do not receive public assistance from Wisconsin Shares. Yet even that expansive prohibition cuts to the law's purpose of eliminating fraudulent activity in the Wisconsin Shares program. A caregiver employee with a record of fraudulent conduct could conspire with the operator of a licensed facility to alter records or otherwise defraud the Wisconsin Shares program, particularly if the facility is small and employs only a few caregivers.[17] Moreover, the fact that a licensed facility does

---

[17] One article from the Journal Sentinel's Cashing in on Kids series illustrates how a provider might coordinate with employees to defraud Wisconsin Shares. The article describes a Milwaukee daycare center run by Latasha Jackson:

> Nearly two-thirds of the children enrolled belonged to employees of Jackson's center, according to documents obtained by the newspaper. Such an arrangement is a red flag for regulators because it is designed with the sole purpose of tapping into child-care funds. Parents don't actually have to report to work. They can stay home and take care of their children and still get paid. . . .

(continued)

not receive funds through Wisconsin Shares at a given time does not make the prohibition any less germane to the purpose of preventing fraudulent activity. If a facility possesses appropriate credentials to accept Wisconsin Shares payments, it always has the option of doing so in the future, thus giving the State a rational basis for <u>always</u> holding the facility to the high standard of never employing people with convictions related to public assistance fraud.

¶43 As DCF observes in its brief, Blake implicitly conceded the third and fourth <u>Aicher</u> factors by declining to argue them in her brief. Regarding the third factor, Blake clearly has not proven that the classification is based solely upon existing circumstances. On the contrary, the permanent lifetime prohibition applies to anyone convicted of one or more of the listed public benefits fraud offenses——a group that will presumably continue to expand indefinitely as new people are convicted of crimes in the future. Similar logic demonstrates that Blake has not proven that Wis. Stat. § 48.685(5)(br)5. fails under the fourth prong——equal application——because every person convicted of a public benefits fraud offense listed in

---

Records show Jackson . . . almost always hired parents who have at least four or five children, making the set-up more lucrative. Each child is typically worth close to $200 a week in subsidies, depending on the age and number of hours of care authorized.

Raquel Rutledge, <u>Private Fortune, Public Cash</u>, Milwaukee J. Sentinel (Aug. 31, 2009), http://www.jsonline.com/watchdog/watchdogreports/56121342.html.

subdivision 5. receives a lifetime ban on eligibility for licensure or certification, so there is no inconsistent application within the class.

¶44 Finally, under the fifth prong of the <u>Aicher</u> analysis, we conclude that a rational basis exists for creating a specific classification for people convicted of offenses involving public assistance fraud because the classification addresses a distinct aspect of the childcare system. See <u>Aicher</u>, 237 Wis. 2d 99, ¶58. Blake argues that it is "irrational in relation to the public good to elevate the goal of protecting the purse over that of protecting children" by allowing rehabilitation for people convicted of some crimes against children but barring for life people with convictions for public assistance fraud. But her analysis improperly focuses on the relative merits of various objectives——protecting public finances, protecting children——that Act 76 sought to advance. Rather, the fact that each objective is a reasonable goal for the State to pursue through the licensure and certification system justifies the existence of separate legislation for each class. Wisconsin Stat. § 48.685(5)(br)5. advances the objective of preventing abuse of the Wisconsin Shares program by permanently barring licensure and certification for people convicted of public assistance fraud. At the same time, it advances the objective of protecting children by permanently barring licensure and certification for people convicted of some violent offenses while allowing rehabilitation for others. As DCF observes in

its brief, "The statute has multiple policy goals, and rationally achieves each of them."

¶45 Because Blake has not presented evidence sufficient under any of the Aicher prongs to call into question Wis. Stat. § 48.685(5)(br)5.'s lifetime prohibition on licensure and certification for people convicted of public assistance fraud offenses, she has failed to prove that the classification is unconstitutional on its face beyond a reasonable doubt. The permanent prohibition rationally advances the State's objective of eliminating fraud against the Wisconsin Shares program and therefore withstands equal protection review on its face.

¶46 We further decline to hold Wis. Stat. § 48.685(5)(br)5. unconstitutional as applied to Blake. She argues that revocation of her certification without an opportunity to demonstrate rehabilitation denies her equal protection of the law because people with convictions for other "dishonesty related offenses" do not suffer permanent ineligibility. Once again, though, she misidentifies the proper scope for evaluating the classification. Like the childcare provider in Brown, Blake "points to no evidence that she was treated differently from any similarly-situated childcare provider whose license was revoked under the new law." Brown, 341 Wis. 2d 449, ¶43. Indeed, since enactment of Act 76, this is the third published case involving a childcare provider facing revocation based on a public assistance fraud conviction. See Jamerson v. DCF, 2013 WI 7, ¶23, 345 Wis. 2d 205, 824 N.W.2d 822; Brown, 341 Wis. 2d 449, ¶43. Like Milwaukee County

25

reviewing the credentials at issue in Jamerson and Brown, Racine County revoked Blake's license upon learning of her forbidden conviction.   Brown, 341 Wis. 2d 449, ¶43 ("[T]he facts of Jamerson show that the Department treated [Brown] almost identically to other individuals whose licenses were revoked.").   Because Racine County treated Blake in a manner consistent with the treatment of similarly situated providers in published cases and Blake has not presented evidence to the contrary, her as-applied equal protection claim fails.

### B.   Substantive Due Process

¶47 The substantive component of the Fourteenth Amendment's Due Process Clause "addresses 'the content of what government may do to people under the guise of law.'"  Wood, 323 Wis. 2d 321, ¶17 (quoting Dane Cty. DHS v. P.P., 2005 WI 32, ¶19, 279 Wis. 2d 169, 694 N.W.2d 344).   "It protects against governmental action that either 'shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'"  P.P., 279 Wis. 2d 169, ¶19 (alteration in original) (quoting State v. Jorgensen, 2003 WI 105, ¶33, 264 Wis. 2d 157, 667 N.W.2d 318).   "A court's task in a challenge based on substantive due process 'involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it.'"   Wood, 323 Wis. 2d 321, ¶18 (alteration in original) (quoting Washington v. Harper, 494 U.S. 210, 220 (1990)); see also Washington v. Glucksburg, 521 U.S. 702, 721

(1997) (requiring "careful description" of constitutional interest asserted in certain substantive due process cases).

¶48 As in the equal protection context, the "threshold question" when reviewing a substantive due process claim "is whether a fundamental right is implicated or whether a suspect class is disadvantaged by the challenged legislation." State v. Smith, 2010 WI 16, ¶12, 323 Wis. 2d 377, 780 N.W.2d 90. Because Blake's substantive due process argument involves neither a fundamental right nor a suspect class, we once again conduct a rational basis review to evaluate whether "the statute is rationally related to achieving a legitimate governmental interest." State v. Luedtke, 2015 WI 42, ¶76, 362 Wis. 2d 1, 863 N.W.2d 592.

¶49 Blake's assertion that permanent ineligibility for certification violates her substantive due process rights is no more availing than her equal protection claim. In her reply brief, Blake makes clear that she questions not the facial constitutionality of Wis. Stat. § 48.685(5)(br)5. but rather its constitutionality as applied to her. Quoting Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1956), she contends that the statute "violates substantive due process as applied to her because her past criminal conviction has no 'rational [non-arbitrary] connection with [her] fitness or capacity to practice' the profession of state-regulated childcare provider." (Alterations in original.) However, even if we were to

27

determine that she possessed a liberty interest in practicing "the profession of state regulated childcare provider,"[18] we would conclude that she has not met her burden of demonstrating beyond a reasonable doubt that the permanent bar on eligibility in Wis. Stat. § 48.685(5)(br)5. irrationally or arbitrarily infringes on such an interest.

¶50  To prevent fraud against the Wisconsin Shares program, the legislature enacted Wis. Stat. § 48.685(5)(br)5., which instituted a broad prohibition on licensure and certification for people with a conviction for an "offense involving fraudulent activity as a participant" in various public benefits

---

[18] The prospect that we would recognize a liberty interest articulated in that manner is unlikely. Among other possible problems for such a claim, any liberty interest that she might have in working as a childcare provider likely would not extend to receipt of Wisconsin Shares funds distributed for the benefit of families in need. Licensure or certification from DCF makes childcare providers eligible to receive payments from families that receive childcare funding through Wisconsin Shares——a benefit program for the families, not for the childcare provider. The Supreme Court has indicated that a State may not contravene the Due Process or Equal Protection Clauses when denying a person the ability to perform a chosen profession. See Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 238-39 (1957). However, the Seventh Circuit has expressed skepticism about identifying "a liberty interest in a private party's participation in a government assistance program designed to provide benefits for a third party." Khan v. Bland, 630 F.3d 519, 534 (7th Cir. 2010). Wisconsin Stat. § 48.685(5)(br)5. makes Blake ineligible to receive Wisconsin Shares payments from families, but it does not prohibit her from providing childcare under all circumstances. The statute eliminates her ability to participate in a public benefit meant for third parties but does not entirely eliminate her ability to pursue her occupation as a childcare provider.

programs.    A conviction provides documented evidence that a person engaged in proscribed conduct and faced a penalty for doing so.    The legislature could reasonably conclude that an effective means for limiting abuse of the Wisconsin Shares program would be to render ineligible for Wisconsin Shares funds people who have received such formal sanction for engaging in fraudulent conduct in the past.    This strict prohibition not only prevents fraud against Wisconsin Shares but also deters other fraudulent conduct by creating a disincentive for existing or potential Wisconsin Shares-eligible providers against engaging in any fraudulent activities.

¶51 Like every other person with a conviction related to public benefits fraud, Blake is not eligible for licensure or certification.    No doubt, the law's effect on her is harsh: her criminal record of fraudulent conduct consists of a single misdemeanor conviction 30 years ago, and the $294 illegal benefit that gave rise to her conviction pales in comparison to the millions of dollars worth of fraud uncovered in the Journal Sentinel stories that preceded the amendments to the childcare laws.    But drawing attention to the distant nature of her conviction and the relative insignificance of the fraud involved does not prove that the legislature acted irrationally or arbitrarily in making people with such convictions ineligible to receive childcare payments through a public benefit program. Eliminating eligibility for all people with a record of public benefits fraud (no matter the circumstances) may be a severe

response to rampant fraud in the Wisconsin Shares program, but it is not an irrational response.

### C.  Irrebuttable Presumption

¶52 The irrebuttable presumption doctrine derives from a series of cases in which the Supreme Court concluded that "a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."  Vlandis v. Kline, 412 U.S. 441, 446 (1973) (quoting Heiner v. Donnan, 285 U.S. 312, 329 (1932)); see Cleveland Bd. of Edu. v. LaFleur, 414 U.S. 632 (1974); U.S. Dep't of Agric. v. Murry, 413 U.S. 508 (1973); Stanley v. Illinois, 405 U.S. 645 (1972); Bell v. Burson, 402 U.S. 535 (1971).[19]

¶53 In Weinberger v. Salfi, 422 U.S. 749 (1975), the Supreme Court distinguished its irrebuttable presumption cases from "constitutional challenges to classifications in . . . social welfare legislation."  Salfi, 422 U.S. at 770. Because Wis. Stat. § 48.685(5)(br)5. creates a classification related to social welfare legislation analogous to the

---

[19] A contemporary Note summarizing the doctrine for Harvard Law Review characterized it as "ill-founded": "There appears to be no justification for the irrebuttable presumption doctrine. . . . [I]t . . . is susceptible to the criticisms made of interventionist equal protection——that it rests upon subjective value judgments which lack clear constitutional basis."  Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv. L. Rev. 1534, 1556 (1974).  More recently, the Seventh Circuit has questioned "whether the 'irrebuttable presumption' doctrine has any continued vitality." Estate of Ekins v. Comm'r, 797 F.2d 481, 486 (7th Cir. 1986).

classification at issue in Salfi, we conclude that it does not create an impermissible irrebuttable presumption.

¶54 Salfi involved a challenge to a federal statute that denied Social Security benefits to widows and stepchildren "who had their respective relationships to a deceased wage earner for less than nine months prior to his death." Salfi, 422 U.S. at 753-54. After the Social Security Administration denied benefits based on the duration-of-relationship requirement, a three-judge district court held that the requirement created an unconstitutional conclusive presumption under the Supreme Court's irrebuttable presumption cases. Id. at 754-55, 767-68.

¶55 The Supreme Court began its discussion of the constitutional challenge to the duration-of-relationship requirement by discussing two lines of cases. First, the Court quoted at length from its decisions in Flemming v. Nestor, 363 U.S. 603 (1960); Dandridge v. Williams, 397 U.S. 471 (1970); and Richardson v. Belcher, 404 U.S. 78 (1971). According to the Court, those cases stood for the proposition that "[a] statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.'" Id. at 768-70 (quoting Richardson, 404 U.S. at 81, which had quoted Dandridge, 397 U.S. at 487).

¶56 Second, it summarized its recent irrebuttable presumption cases:

> Stanley v. Illinois held that it was a denial of the equal protection guaranteed by the Fourteenth

31

Amendment for a State to deny a hearing on parental fitness to an unwed father when such a hearing was granted to all other parents whose custody of their children was challenged. . . .

In _Vlandis v. Kline_, a statutory definition of "residents" for purposes of fixing tuition to be paid by students in a state university system was held invalid. The Court held that where Connecticut purported to be concerned with residency, it might not at the same time deny to one seeking to meet its test of residency the opportunity to show factors clearly bearing on that issue. 412 U.S., at 452.

In _LaFleur_ the Court held invalid, on the authority of _Stanley_ and _Vlandis_, school board regulations requiring pregnant school teachers to take unpaid maternity leave commencing four to five months before the expected birth.

_Salfi_, 422 U.S. at 771.

¶57 The Court then explained the distinction between the two sets of cases and their relevance to the duration-of-relationship requirement:

We hold that [the irrebuttable presumption] cases are not controlling on the issue before us now. Unlike the claims involved in _Stanley_ and _LaFleur_, a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, _Dandridge v. Williams_, _supra_, though of course Congress may not invidiously discriminate among such claimants on the basis of a "bare congressional desire to harm a politically unpopular group," _U.S. Dept. of Agriculture v. Moreno_, 413 U.S. 528, 534 (1973), or on the basis of criteria which bear no rational relation to a legitimate legislative goal. _Jimenez v. Weinberger_, 417 U.S. 628, 636 (1974); _U.S. Dept. of Agriculture v. Murry_, 413 U.S. 508, 513-514 (1973). Unlike the statutory scheme in _Vlandis_, 412 U.S., at 449, the Social Security Act does not purport to speak in terms of the bona fides of the parties to a marriage, but then make plainly relevant evidence of such bona fides inadmissible. . . . [T]he benefits here are available upon compliance with an objective

32

criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility.

Id. at 771-72 (quoting U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 534 (1973)).

¶58 Further, the Court expressed concern that "extension of the holdings of Stanley, Vlandis, and LaFleur to the eligibility requirement . . . would turn the doctrine of those cases into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution." Id. at 772.

¶59 Pivoting from the irrebuttable presumption argument, the Court articulated an alternative standard for government benefits classifications:

The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

Id. at 777. Distinguishing "programs for the distribution of social insurance benefits" from "criminal prosecutions, or the custody proceedings at issue in Stanley v. Illinois," the Court concluded by observing that benefits "programs do not involve affirmative Government action which seriously curtails important liberties cognizable under the Constitution." Id. at 785.

¶60 Just as Congress permissibly painted with a broad brush in excluding certain widows and stepchildren from Social

33

Security benefits under the duration-of-relationship requirement, Wisconsin's legislature has created an expansive prohibition to eliminate fraud against the Wisconsin Shares program. Only those who satisfy the objective criterion of not having a conviction for public benefits fraud are eligible to receive the benefit of payments through Wisconsin Shares. Blake's is not a case in which the legislature has declared certain facts about her to be true and then denied her any opportunity to present evidence disproving the truth of the State's declaration. Instead, the State merely has rendered ineligible for payment through Wisconsin Shares people who share an objective characteristic——a conviction for an offense pertaining to public benefits fraud. As discussed at length already, that classification bears a rational relationship to the reasonable legislative objective of preventing fraud in the Wisconsin Shares program.

## IV. CONCLUSION

¶61 Each of the constitutional claims that Blake raises in this case ultimately requires the court to look to the interest that the legislature sought to advance when it revised the childcare provider laws. The legislature enacted Act 76 shortly after investigative reporting revealed rampant abuse within the Wisconsin Shares program. Among other reasonable objectives, Act 76 advances the goal of reducing and eliminating systemic fraud. Thus, Act 76's creation of a prohibition on eligibility for licensure and certification for people convicted of an "offense involving fraudulent activity as a participant in"

34

various public benefits programs rationally relates to this fraud reduction objective. No doubt, the sweeping nature of the law creates harsh results for people such as Blake who have a conviction on their record that is distant in time and involved a relatively small amount of money. Nevertheless, the law rationally advances the legislature's fraud reduction objective in a manner that outweighs any interest that Blake might have in eligibility to receive payments through Wisconsin Shares. It is for the legislature, not the court, to reexamine the policy determinations incorporated into this statute. Because we conclude that Wis. Stat. § 48.685(5)(br)5. denies Blake neither due process nor equal protection of the law, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶62 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* At issue in the instant case is the constitutionality of Wis. Stat. § 48.685(5)(br)5. (2013-14),[1] which _permanently_ bars individuals convicted of, among other things, "[a]n offense involving fraudulent activity as a participant" in various federal and Wisconsin welfare programs from becoming a state certified childcare provider.

¶63 The consequences of being unable to become a certified childcare provider are substantial. Childcare providers who provide care for four or more children or for children over the age of seven must be certified.[2] Only certified childcare providers are eligible to provide services to individuals in the Wisconsin Shares program, a childcare subsidy program for low-income individuals.

¶64 As a result of Wis. Stat. § 48.685(5)(br)5., Sonja Blake is _permanently_ barred from being a certified childcare provider. The basis for the permanent bar is Sonja Blake's 1986 misdemeanor conviction for obtaining $294 in benefits to which she was not entitled through a federal public assistance program unrelated to childcare. Sonja Blake obtained the $294 in excess benefits by failing to report as assets a motorcycle and a car that did not run.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[2] See Wis. Stat. § 48.65; Brown v. DCF, 2012 WI App 61, ¶40, 341 Wis. 2d 449, 819 N.W.2d 827.

¶65 Blake satisfied the requirements of her conviction. She served two years' probation and paid $294 in restitution. Since 1986 she has had no trouble with the law. She has been a Wisconsin certified childcare provider for nearly a decade. She has never faced complaints of fraud, abuse, or neglect.[3]

¶66 This personal history is strong evidence of Blake's rehabilitation and that she is no danger to the public. Empirical evidence demonstrates that the risk of recidivism declines as time passes.[4] Wisconsin's public policy favors rehabilitation of offenders and their reintegration into society.[5] Nevertheless, after the enactment of Wis. Stat. § 48.685(5)(br)5. (2009 Wis. Act 76), Racine County, which had

_____

[3] Blake's certification was revoked in 2006 and reinstated in 2008. See majority op., ¶¶14-15.

[4] See, e.g., Alfred Blumstein & Kiminori Nakamura, "Redemption" in an Era of Widespread Criminal Background Checks, U.S. Dep't of Justice, Nat'l Inst. of Justice (June 2009), http://www.nij.gov/journals/263/pages/redemption.aspx ("It is well known——and widely accepted by criminologists and practitioners alike——that recidivism declines steadily with time clean.").

[5] Wisconsin case law recognizes that a goal of sentencing is imposing the minimum sentence consistent with "the rehabilitative needs of the defendant." See State v. Gallion, 2004 WI 42, ¶44, 270 Wis. 2d 535, 678 N.W.2d 197 (quotation omitted); see also State v. Paske, 163 Wis. 2d 52, 62, 471 N.W.2d 55 (1991) ("The three primary factors which a sentencing judge must consider are the gravity of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public."); Wis. Dep't of Corrections, Reentry at 2 (Mar. 2012), http://doc.wi.gov/Documents/WEB/ABOUT/OVERVIEW/Reentry%20Unit/Reentry%20Communications%20Document%202012.pdf (stating that the Wisconsin Department of Corrections "strives to rehabilitate and successfully reintegrate [offenders] into society").

previously granted and renewed Blake's childcare certification, permanently revoked her certification.

¶67 Although the majority opinion recognizes that "the sweeping nature" of Wis. Stat. § 48.685(5)(br)5. "creates harsh results for people such as Blake who have a conviction . . . that is distant in time and involved a relatively small amount of money," the majority opinion holds that § 48.685(5)(br)5. does not violate equal protection, substantive due process, or the irrebuttable presumption doctrine.[6]

¶68 I disagree with the majority opinion for two reasons.

¶69 First, whether analyzed under the equal protection or the due process clauses of the United States and Wisconsin Constitutions, Wis. Stat. § 48.685(5)(br)5. is not rationally related to legitimate state purposes. Although rational basis scrutiny may be deferential, it is not "toothless."[7]

¶70 The permanent bar against obtaining a childcare certification for individuals convicted of an "offense involving fraud as a participant" in various public assistance programs set forth in Wis. Stat. § 48.685(5)(br)5. is not rationally related to the purposes of "preventing fraud against Wisconsin

---

[6] See majority op., ¶61.

[7] Schweiker v. Wilson, 450 U.S. 221, 234 (1981) (quoting Matthews v. Lucas, 427 U.S. 495, 510 (1976)) (internal quotation marks omitted)).

3

Shares" or "protecting children, protecting the families of children, and protecting private employers in childcare."[8]

¶71 Because I would hold that Wis. Stat. § 48.685(5)(br)5. is unconstitutional under the equal protection and due process clauses, I would reverse the decision of the court of appeals in the instant case and overrule the court of appeals' decision in Brown v. Department of Children & Families, 2012 WI App 61, 341 Wis. 2d 449, ¶40, N.W.2d 827.[9]

¶72 Second, the majority opinion's decision upholding the draconian sanction imposed by Wis. Stat. § 48.685(5)(br)5. raises the constitutional issue of whether the statute is an unconstitutional ex post facto law. A statutory interpretation that does not raise constitutional issues is preferable to one that does. See Jankowski v. Milwaukee Cnty., 104 Wis. 2d 431, 439, 312 N.W.2d 45 (1981) ("'[S]tatutes should be construed so as to avoid constitutional objections.'") (quoting Niagara of Wis. Paper Corp. v. DNR, 84 Wis. 2d 32, 50, 268 N.W.2d 153 (1978)).

---

[8] See majority op., ¶¶39, 41, 60.

[9] Brown upheld Wis. Stat. § 48.685(5)(br)5. against a constitutional challenge somewhat similar to that raised in the instant case. Brown concluded that Wis. Stat. § 48.685(5)(br)5. was constitutional under the equal protection and due process clauses of the United States and Wisconsin Constitutions. See Brown, 341 Wis. 2d 449, ¶¶33-34, 40.

Although I limit my conclusion to Wis. Stat. § 48.685(5)(br)5., as does the majority opinion, my conclusion may apply with equal force to other parts of the classification system created by Wis. Stat. § 48.685(4m)(a)-(b) and (5)(br).

4

¶73 For the reasons set forth, I dissent and write separately.

I

¶74 I disagree with the majority opinion's analysis and conclusions under both the equal protection and due process clauses that Wis. Stat. § 48.685(5)(br)5. is rationally related to a legitimate state purpose.

¶75 I begin with the equal protection clause. Under the equal protection clause, the legislature may not adopt arbitrary or irrational classifications.[10]

¶76 Wisconsin Stat. § 48.685(4m)(a)-(b) and (5)(br) classify various felony and misdemeanor offenses into three categories.

¶77 Each of the three categories of offenses created by Wis. Stat. § 48.685(4m)(a)-(b) and (5)(br) has a different consequence for childcare certification. These three categories are: (1) offenses that result in a permanent bar from obtaining a childcare certification with no opportunity to show rehabilitation; (2) offenses that result in a bar for five years after the completion of the sentence (including probation, parole, or extended supervision); and (3) offenses that result in a bar that may be lifted at any time upon a showing of rehabilitation.

---

[10] See State v. Burgess, 2003 WI 71, ¶32, 262 Wis. 2d 354, 665 N.W.2d 124; Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849.

¶78 It is difficult to discern what, if any, organizing principles the legislature followed in classifying which offenses fall into each of these three categories, let alone their relationship to the legislative purposes of "preventing fraud against Wisconsin Shares"[11] or "protecting children, protecting the families of children, and protecting private employers in childcare."[12]

¶79 For example, some fraudulent activities result in a permanent bar. Individuals convicted of "an offense involving fraudulent activity as a participant" in various public assistance programs——even fraudulent activity in trifling amounts——are permanently barred from obtaining a childcare certification.[13] Not all crimes of dishonesty or fraud, however, result in a permanent bar from obtaining a childcare certification. Rather, offenses like making fake IDs, impersonating government agents, or forging prescriptions result in only a five year bar from obtaining a childcare certification.

¶80 Likewise, although convictions for several serious felonies like first degree intentional homicide, kidnapping, and sexual assault result in a permanent bar from obtaining a childcare certification, not all serious felonies result in a permanent bar. Homicide by intoxicated use of a vehicle or

---

[11] See majority op., ¶¶41, 60.

[12] See majority op., ¶39.

[13] See Wis. Stat. § 48.685(5)(br)5.

firearm or providing alcoholic beverages to children resulting in death or great bodily harm result in a five-year bar. Offenses like sexual exploitation by a therapist, human trafficking, or misdemeanor neglect of a child merely result in a bar against obtaining a certification that may be lifted upon a showing of rehabilitation. Yet these offenses pose serious danger to children or families of children.

¶81 These inconsistencies demonstrate that the three-part classification system in Wis. Stat. § 48.685 is not rationally related to the State's purposes of "preventing fraud against Wisconsin Shares"[14] or "protecting children, protecting the families of children, and protecting private employers in childcare."[15]

¶82 The State argues that analyzing the rationality of the three-part classification system adopted by the legislature is misguided. According to the State, the only relevant classification to be examined in the instant case is that of individuals convicted of offenses involving fraudulent activity as recipients in various public assistance programs. In the State's view, all persons, including Blake, convicted of offenses involving fraudulent activity as recipients in public benefits programs are treated the same.

¶83 The majority opinion adopts this view without analysis, explanation, or citation to authority, stating: "The

---

[14] See majority op., ¶¶41, 60.

[15] See majority op., ¶39.

7

class we evaluate for equal protection purposes consists of people permanently ineligible for licensure or certification on the grounds that their record contains a conviction for '[a]n offense involving fraudulent activity as a participant' in one of the various government benefits programs delineated in" Wis. Stat. § 48.685(5)(br)5.[16]

¶84 By evaluating only the class of individuals permanently barred from being certified childcare providers on account of convictions for offenses involving fraudulent activity as participants in a public assistance program, the majority opinion's review is "a mere tautological recognition of the fact that [the legislature] did what it intended to do." U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 180 (1980) (Stevens, J., concurring in the judgment).

¶85 "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes."[17] I conclude that "[t]his Court . . . has an obligation to view the classificatory system, in an effort to determine whether the disparate treatment accorded the affected classes is arbitrary."[18]

¶86 Looking to the entire classification system in the statute, I conclude that the three categories created by Wis.

---

[16] See majority op., ¶37; see also majority op., ¶46.

[17] See Rinaldi v. Yeager, 384 U.S. 305, 308 (1966).

[18] Logan v. Zimmerman Brush Co., 455 U.S. 422, 441 (1982) (Blackmun, J., writing separately joined by three justices) (emphasis in original).

8

Stat. § 48.685 are irrational and arbitrary; they are not based upon substantial distinctions that make the classes really different from one another, and the classifications adopted are not germane to the purposes of the law.[19]

¶87 The majority opinion concludes that Wis. Stat. § 48.685(5)(br)5. and the permanent bar for individuals convicted of public assistance fraud is rational because "[t]he legislature . . . could reasonably determine that creating different outcomes for people with different underlying convictions would most efficaciously advance the objective of preventing fraud against Wisconsin Shares. Because public benefits fraud is the <u>particular type of fraud</u> that the legislature sought to prevent, the legislature could reasonably determine that public benefits fraud offenses warranted a stricter prohibition than other underlying convictions."[20]

¶88 This conclusion, however, ignores three facts demonstrating that Wis. Stat. § 48.685(5)(br)5.'s permanent bar on obtaining a childcare certification for individuals convicted of public assistance fraud does not advance the purpose of "eliminating fraudulent activity in the Wisconsin Shares program."[21]

¶89 First, childcare providers who provide care for four or more children or for children over the age of seven must be

---

[19] See Aicher, 237 Wis. 2d 99, ¶58.

[20] See majority op., ¶41 (emphasis in original).

[21] See majority op., ¶42.

certified,[22] regardless of whether those providers receive funds from Wisconsin Shares. More than half of the facilities whose employees must be certified childcare providers receive no money from Wisconsin Shares whatsoever.[23] In other words, individuals like Blake are barred from ever working for a childcare provider whose employees must be certified, even though working for that childcare provider might not present an opportunity to defraud Wisconsin Shares.

¶90 Second, the permanent bar on being a certified childcare provider based on public assistance fraud is not limited to individuals who defrauded Wisconsin Shares. Instead, individuals (like Blake) who 30 years ago illegally obtained a small amount of benefits from a federal program not related to childcare[24] are subject to the same permanent bar received by individuals who illegally obtained significant amounts of benefits from Wisconsin Shares.[25]

---

[22] See Brown, 341 Wis. 2d 449, ¶40.

[23] See Pet'r's App. at 032.

[24] See Wis. Stat. § 48.685(5)(br)5. (barring individuals convicted of "[a]n offense involving fraudulent activity as a participant in the Wisconsin Works program" as well as federal programs like AFDC, food stamps, or other state programs like Badger Care).

[25] See, e.g., Raquel Rutledge, Private Fortune, Public Cash, Milwaukee J. Sentinel (Aug. 31, 2009), available at http://www.jsonline.com/watchdog/watchdogreports/56121342.html (describing a woman who received nearly $3 million from the Wisconsin Shares program over more than a decade).

¶91 Third, the permanent bar against obtaining a childcare certification for individuals convicted of offenses involving fraudulent activity in a public benefits program does not apply to bookkeepers for regulated childcare facilities, or to other individuals who may have access to Wisconsin Shares' funds. Given that Wis. Stat. § 48.685(5)(br)5.'s purpose is eliminating fraud in the Wisconsin Shares program, prohibiting individuals from working as caregivers while allowing individuals to work as bookkeepers for childcare facilities receiving Wisconsin Shares funds is not rationally related to the legislative purpose.

¶92 Viewing the entire classification system in the statute, I conclude that the classifications created by Wis. Stat. § 48.685 are irrational and arbitrary. Accordingly I would hold that Wis. Stat. § 48.685(5)(br)5. violates the equal protection clauses of the United States and Wisconsin Constitutions.

¶93 Now I turn to the due process clause. I conclude that Wis. Stat. § 48.685(5)(br)5. is unconstitutional under the due process clause because the statute shocks the conscience and, as explained above, is not rationally related to a legitimate state purpose.

¶94 As the majority opinion states, the due process clause protects "'against governmental action that either shocks the

11

conscience or interferes with rights implicit in the concept of ordered liberty.'"[26]

¶95 Simply put, Wis. Stat. § 48.685(5)(br)5. shocks the conscience.

¶96 The means by which the legislature chose to further its legitimate interest in protecting the public fisc and deterring fraud against Wisconsin Shares is arbitrary and smacks of retribution. The permanent bar on obtaining a childcare certification imposed by Wis. Stat. § 48.685(5)(br)5. is a draconian and disproportionate deterrent for the kind of fraud the legislature sought to prevent.

¶97 Furthermore, Wis. Stat. § 48.685(5)(br)5. is so broad that it arbitrarily, irrationally, and significantly impedes the ability of law-abiding people like Blake to earn a living in their chosen profession, childcare. The permanent bar is based on a 30-year-old conviction for obtaining $294 in excess benefits under a federal public assistance program totally unrelated to Wisconsin Shares——the program which the legislature sought to protect by enacting Wis. Stat. § 48.685(5)(br)5. This result should shock the conscience. It does mine.

¶98 "[T]he right to work for a living in the common occupations of the community is the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Truax v. Raich, 239 U.S. 33,

---

[26] Majority op., ¶47 (quoting Dane Cnty. DHS v. P.P., 2005 WI 32, ¶19, 279 Wis. 2d 169, 694 N.W.2d 344) (internal alterations and quotation marks omitted).

41 (1915); see also Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 239-39 (1957); majority op., ¶49 n.18.

¶99 In my view, Wis. Stat. § 48.685(5)(br)5. is so "'brutal' and 'offensive'" that it does not "comport with traditional ideas of fair play and decency . . . ."[27] Accordingly, Wis. Stat. § 48.685(5)(br)5. violates substantive due process.

¶100 The majority opinion recognizes, in effect, the disproportionate, draconian, and "brutal" nature of Wis. Stat. § 48.685(5)(br)5. As the majority opinion puts it, "the sweeping nature" of Wis. Stat. § 48.685(5)(br)5. "creates harsh results for people such as Blake who have a conviction . . . that is distant in time and involved a relatively small amount of money."[28]

¶101 Reinforcing this point, both this court and the court of appeals have previously recognized the harshness of Wis. Stat. § 48.684(5)(br)5.'s permanent bar on obtaining a childcare certification for individuals convicted of offenses "involving fraudulent activity as a participant in" public assistance programs.[29]

---

[27] See Breithaupt v. Abram, 352 U.S. 432, 435 (1957) (quoting Rochin v. California, 342 U.S. 165, 174 (1952)).

[28] See majority op., ¶61.

[29] See, e.g., Jamerson v. DCF, 2013 WI 7, ¶¶2 & n.3, 72, 345 Wis. 2d 205, 824 N.W.2d 822 (twice describing the permanent bar on obtaining a childcare certification as a "harsh penalty"); Brown, 341 Wis. 2d 449, ¶40 (noting that the plaintiff was "undoubtedly correct in highlighting the harshness of the new law . . . .").

13

II

¶102 Recognizing the harshness of Wis. Stat. § 48.685(5)(br)5. but concluding that the law is nevertheless constitutional under the equal protection and due process clauses raises a further question:  Whether the law is so "harsh" and "punitive" that it violates the ex post facto clauses of the United States and Wisconsin Constitutions.  The parties have not briefed or argued this point.  Without briefs or argument, I discuss but do not decide this issue.

¶103 One commentator has argued that the retroactive and permanent punitive effect of Wis. Stat. § 48.685(5)(br)5. violates the ex post facto clause.  See Courtney Lanz, Comment, Caregivers Uncared For: How to Fix Wisconsin's Ex Post Facto Caregiver Law, 2013 Wis. L. Rev. 1067, 1081 (asserting that the "punitive effect" of Wis. Stat. § 48.685(5)(br)5. "is sufficient to outweigh any stated civil intent and thus violates the Ex Post Facto clause.").

¶104 Relevant to the instant case, the ex post facto clause prohibits laws making "more burdensome the punishment for a crime, after its commission . . . ."[30]

¶105 Without analysis of Wis. Stat. § 48.685(5)(br)5. it appears that the statute is a regulatory civil statute.  A regulatory civil statute nonetheless may violate the ex post facto clause if it is "'so punitive either in purpose or effect'

---

[30] State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) (internal quotation marks and alterations omitted) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).

as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'"[31]

¶106 For several reasons, the permanent bar on obtaining a childcare certification set forth in Wis. Stat. § 48.685(5)(br)5. may be so punitive in purpose and effect that the otherwise regulatory civil statute may be transformed into a criminal penalty.

¶107 First, Wis. Stat. § 48.685(5)(br)5. permanently bars individuals convicted of "offense[s] involving fraudulent activity as a participant" in various social welfare programs from obtaining a childcare certification and prohibits individuals from demonstrating rehabilitation.[32] In this respect, the law appears to be punitive——it imposes a sanction that cannot be lifted no matter the circumstances.

¶108 Second, the permanent bar (with no opportunity to show rehabilitation) imposed by Wis. Stat. § 48.685(5)(br)5. applies regardless of when the "offense involving fraudulent activity" occurred, no matter how minor the fraud was, and no matter which

---

[31] See In re Commitment of Rachel, 2002 WI 81, ¶33, 254 Wis. 2d 215, 647 N.W.2d 762 (quoting Hudson v. United States, 522 U.S. 93, 99 (1996)) (alteration in Rachel).

In analyzing whether a statute violates the ex post facto clause, courts apply the "intent-effects" test derived from Hudson and repeated in our cases. See Rachel, 254 Wis. 2d 215, ¶39; State v. Scruggs, 2015 WI App 88, ¶7, 365 Wis. 2d 568, 872 N.W.2d 146 (citation omitted).

[32] See Wis. Stat. § 48.685(5)(br) ("[N]o person who has been convicted . . . may be permitted to demonstrate that he or she has been rehabilitated."); majority op., ¶8.

15

public benefits program was defrauded. Thus, an individual like Blake, who committed an offense and was convicted 30 years ago of obtaining $294 by fraud from a federal program unrelated to childcare and unrelated to the Wisconsin Shares program, is treated identically to an individual who recently stole millions from Wisconsin Shares.[33] Imposing the same permanent bar against individuals under Blake's circumstances appears, in light of the legislature's purposes of protecting children and families and preventing fraud against Wisconsin Shares, punitive.

¶109 Third, Wis. Stat. § 48.685(5)(br)5. appears to further "the traditional aims of punishment—retribution and deterrence . . . ," factors used to identify ex post facto laws.[34] As stated before, Wis. Stat. § 48.685(5)(br)5. appears retributive because it gives individuals convicted of "offense[s] involving fraudulent activity as a participant" in public benefits programs no opportunity to demonstrate rehabilitation and imposes the same sanction regardless of when the fraud occurred, what program was defrauded, and how minimal or serious the fraud was. As the majority opinion states, this "strict prohibition" is tied to the legislative purposes of "prevent[ing] fraud against Wisconsin Shares [and] also

---

[33] See, e.g., Rutledge, supra note 25 (describing a woman who received nearly $3 million from the Wisconsin Shares program over more than a decade).

[34] Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963); see also Commitment of Rachel, 254 Wis. 2d 215, ¶33 (quoting this factor and others identified in Mendoza-Martinez).

16

deter[ring] other fraudulent conduct . . . ."[35] General and specific deterrence are traditional aims of punishment.

¶110 Finally, the circumstances under which Wis. Stat. § 48.685(5)(br)5. was adopted also support the conclusion that the law may be punitive and retributive. Wisconsin Stat. § 48.685(5)(br)5. was adopted by the legislature after an investigation by the Milwaukee Journal Sentinel uncovered significant fraud against the Wisconsin Shares program.[36] The bill creating Wis. Stat. § 48.685(5)(br)5. was introduced on October 2, 2009 and passed both houses of the legislature unanimously a little more than a month later. This haste suggests that the legislature's "sudden and strong passions" may have been aroused by fraud uncovered against the Wisconsin Shares program. One purpose of the ex post facto clause is to prevent "sudden and strong passions" from transforming well-intentioned regulations into arbitrary and punitive legislation.[37]

¶111 The prohibition on ex post facto laws stems from basic considerations of fairness and fair warning.[38] There is no fairness or fair warning here. Wisconsin Stat. § 48.685(5)(br)5. permanently bars individuals like Blake from

---

[35] Majority op., ¶50.

[36] See majority op., ¶¶11, 51.

[37] See Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 137-38 (1810).

[38] See State v. Kurzawa, 180 Wis. 2d 502, 513, 509 N.W.2d 712 (1994).

17

ever obtaining a childcare certification based on a decades-old misdemeanor conviction. Imposing a draconian penalty decades after a misdemeanor conviction without notice to the individual at the time of conviction raises the question of whether Wis. Stat. § 48.685(5)(br)5. makes "more burdensome the punishment for a crime, after its commission . . . ."[39]

¶112 Under the circumstances of the instant case and the interpretation adopted by the majority opinion, the majority has exposed the application of Wis. Stat. § 48.685(5)(br)5. to Blake to a challenge as an unconstitutional ex post facto law.

¶113 For the reasons set forth, I dissent and write separately.

¶114 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[39] Thiel, 188 Wis. 2d at 703 (internal quotation marks and alterations omitted) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).