BLANCHARD, J.
*327 ¶1 Arty's, LLC, mixes various types of distilled spirits with soda, water, and various flavorings to produce seven-ounce bottles of "premixed cocktails." Arty's sells its bottled products to liquor wholesalers, who sell them to retailers. Arty's buys in bulk from a distillery the various distilled spirits that it uses to create its products. It is undisputed that these activities of Arty's involve sales of "intoxicating liquors," see WIS. STAT . § 125.02(8) (2015-16), and that sales of intoxicating liquors are subject to a state occupational tax, see WIS. STAT . § 139.03(2m).[1]
¶2 Based on differing statutory interpretations, Arty's and the Wisconsin Department of Revenue dispute two closely related questions regarding Arty's liability for the intoxicating liquor occupational tax. When does Arty's incur liability, and how much of the contents of each bottle is subject to the tax? The Department argues that Arty's incurs tax liability when it sells its mixtures in bottles to wholesalers and that the taxes are calculated based on the entire contents of each bottle (alcoholic and non-alcoholic ingredients). Arty's argues that it incurs liability when Arty's purchases distilled spirits in bulk from a distiller and that taxes are calculated later based only on the distilled spirits portion of the contents of each bottle.
¶3 The Tax Appeals Commission agreed with the Department's statutory interpretation. Arty's petitioned for judicial review, and the circuit court affirmed the commission's ruling and order. Arty's appeals.
*328 We agree with the commission and accordingly affirm the circuit court on this statutory interpretation issue. We conclude that the tax liability is incurred when Arty's sells to *595 its customer wholesalers, and that the entire volume of each bottle is taxable as an intoxicating liquor.
¶4 Arty's also makes a constitutional argument, based on the assumption that the Department prevails on the statutory interpretation issue just described. This argument is based on two facts: (1) sales of intoxicating liquors are taxed at higher rates than are sales of the same volumes of wine, which are in turn taxed higher than sales of the same volume of fermented malt beverages (beer); and (2) Arty's products have alcohol contents that are lower or roughly equivalent to some wines and beers. Properly framed, Arty's argues that, if the commission is correct in its statutory interpretation, the statutes on their face violate the constitutional guarantee of equal protection of the laws, because sellers of intoxicating liquor pay higher occupational tax rates than sellers of wines or beers containing the same or higher alcohol contents, without a rational basis to justify this distinction.
¶5 The commission rejected Arty's constitutional argument. On review, the circuit court remanded the constitutional issue to the commission on the ground that it "has not been appropriately developed on summary judgment." The Department cross appeals the circuit court's decision to remand. We agree with the Department that remand to the commission is not necessary. We also conclude that Arty's fails to demonstrate that there is no rational basis for the legislation. We discern a rational basis in the pursuit of the efficient and effective collection of the taxes for the benefit of the public, including deterring *329 and detecting tax cheating. Accordingly, we reverse the circuit court's remand order and, instead, affirm the commission decision on the constitutional issue.
BACKGROUND
¶6 The facts are undisputed. Arty's produces and sells bottled "premixed cocktails." One example is what Arty's calls a "ready to drink" bottle of "Brandy Old Fashioned Sweet." Each seven-ounce bottle produced by Arty's consists of: 1.2 ounces of distilled spirits (for example, brandy); and 5.8 ounces of soda, water, and flavoring.
¶7 Arty's does not ferment substances to produce alcohol, nor does it distill alcohol from any product of fermentation. Instead, Arty's purchases distilled spirits in bulk from a distillery, then dilutes the distilled spirits in a mixture of soda, water, and flavoring. Arty's sells the bottled mixtures to licensed liquor wholesalers.
¶8 The distilled spirits that Arty's purchases are 40 percent alcohol by volume. After dilution, each Arty's bottle is 6.9 percent alcohol by volume. To elaborate briefly regarding alcohol, the parties do not dispute the chemical and mixing processes involved. "Alcohol is a product of fermentation," and alcohol is "separated, not produced, by distillation." Pennell v. State , 141 Wis. 35, 38, 123 N.W. 115 (1909). In general, distillation involves boiling and condensation to separate components of a liquid mixture.[2] In particular, "[d]istillation of fermented products produces distilled *330 beverages with a high alcohol content."[3] In contrast, with wine or beer, the process ends with fermentation, producing a liquid containing alcohol which is not distilled, *596 thus resulting in a lower alcohol content.[4] Here, the distiller takes fermented alcoholic products and distills them into products with more highly concentrated alcohol levels (called distilled spirits or liquor), which are then sold to Arty's.
¶9 Arty's remitted payments to the Department for the intoxicating liquor occupational tax for the period March 31, 2012, through June 30, 2013. This was at the statutory rate of 85.86 cents per liter imposed on "intoxicating liquor." See WIS. STAT . § 139.03(2m). However, in paying these taxes, Arty's counted only the distilled spirits portion of its products and not other ingredients. The Department assessed an additional tax, calculated based on the entire volume of each bottle. Arty's filed a petition for redetermination, which the Department denied.
¶10 Arty's petitioned the commission, challenging what Arty's described as the Department's decision to "attach[ ] tax to [sales of] non-alcohol ingredient[s]," namely, the soda, water, and flavoring, as well as presenting its constitutional argument. On cross motions for summary judgment, the commission rejected both Arty's statutory interpretation argument and its constitutional argument.
¶11 Arty's filed a petition for review in circuit court. The court rejected the statutory interpretation argument made by Arty's. On the constitutional issue, the court remanded to the commission because the *331 court deemed the issue insufficiently developed. Arty's appeals the first decision and the Department cross appeals the second.
DISCUSSION
¶12 We address the statutory interpretation issue first and then the constitutional issue.
I. STATUTORY INTERPRETATION
A. Standard Of Review And Statutory Interpretation
¶13 "In an appeal following a decision of the Tax Appeals Commission, we review the Commission's decision, not the circuit court's." Xerox Corp. v. DOR , 2009 WI App 113, ¶ 8, 321 Wis.2d 181, 772 N.W.2d 677. There are no factual disputes in this appeal and cross appeal, only disagreements about the interpretation and application of statutes. We review de novo legal conclusions of an administrative agency. Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶ 84, 382 Wis.2d 496, 914 N.W.2d 21.[5]
¶14 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may *332 be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 44, 271 Wis.2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " Id. , ¶ 45 (quoted source omitted). *597 ¶15 "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶ 46. Also, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id.
¶16 " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " Id. (quoted source omitted). If, instead, statutory language is ambiguous, then courts may examine legislative history to resolve the ambiguity. See id. , ¶¶ 50-51.
B. WISCONSIN STAT . Chs. 125 And 139
¶17 We now provide an overview of pertinent provisions of chapters 125 and 139 of the state statutes, as context for the analysis that follows. We address Wisconsin law only, and reject Arty's invitation to interpret the Wisconsin occupational taxes on alcoholic beverages "in harmony with" the federal alcohol sales taxation structure. Without going into detail regarding the federal system, it is sufficient to *333 know that the federal government taxes products that contain distilled spirits, based on alcohol by volume, in a manner entirely different from that used by the Department to collect Wisconsin's occupational tax on intoxicating liquor. See 26 U.S.C. § 5001(a)(1), (b) (Dec. 2017) (imposing a tax on each "proof gallon" of distilled spirits produced in or imported into the United States, which attaches when the distilled spirits are produced).
WISCONSIN STAT . Ch. 125
¶18 WISCONSIN STATS . ch. 125 describes a state "system" for the "production, distribution, and sale" of "alcohol beverages," which includes "state regulatory authority" over this system, "for the benefit of the public health and welfare and this state's economic stability." See WIS. STAT. § 125.01 ("Legislative intent"). Alcoholic beverages are placed into three categories, which we now list in the order from most to least heavily taxed under the occupational tax, as discussed in more detail below, in connection with WIS. STAT . Ch. 139:
(1) "intoxicating liquor," WIS. STAT . § 125.02(8) ;
(2) "wine," § 125.02(22) ; and
(3) "fermented malt beverages" (including beer), § 125.02(6).
There is no dispute that the distilled spirits that Arty's purchases in bulk are "intoxicating liquors," nor is there any suggestion that Arty's sells wine or beer. Therefore we need not address the definitions of the other two categories of alcoholic beverages.
¶19 "Intoxicating liquor" is defined as:
*334 all ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume, which are beverages, but does not include "fermented malt beverages."
WIS. STAT . § 125.02(8). To repeat, each Arty's bottle contains a beverage that is 6.9 percent alcohol by volume, well above the 0.5 percent threshold that partially defines intoxicating liquor.
¶20 WISCONSIN STAT . ch. 125 defines two types of producers of intoxicating liquors: "rectifiers" and "manufacturers." Neither side here argues that Arty's is a manufacturer and they agree that the source of distilled spirits for Arty's is a manufacturer. See WIS. STAT. § 125.02(10) (" 'Manufacturer' means a person, other than a rectifier, that ferments, manufactures or distills *598 intoxicating liquor."). However, the parties disagree about whether Arty's is a "rectifier" under one shared definition of "rectifier" contained in both chapters 125 and 139. This shared definition is:
A person who after rectifying and purifying distilled spirits, by mixing such spirits with any materials, manufactures any spurious, imitation or compound liquors for sale.
Sec. 125.02(16)(c) ; see also WIS. STAT . § 139.01(6) (including this same language, in part, to define rectifier).
WISCONSIN STAT . Ch. 139
¶21 Certain beverage tax laws in chapter 139 interact closely with the chapter 125 provisions quoted above. As noted, the tax in chapter 139 at issue here *335 establishes an occupational tax "upon the selling of intoxicating liquor" at the rate of 85.86 cents per liter. WIS. STAT . § 139.03(2m).
¶22 Taxes "imposed" under WIS. STAT . § 139.03(2m)"shall be paid" during the month after "the tax liability is incurred." WIS. STAT . § 139.06(1)(a). "Liability for taxes" under § 139.03(2m)"on liquor produced or bottled in this state ... is incurred at the time of the first sale in this state." Sec. 139.06(1)(b). However, "[n]o tax is levied by ... [s.] 139.03 in respect to ... [s]ale or shipment of ... intoxicating liquor in bulk between manufacturers, rectifiers and wineries." WIS. STAT . § 139.04(4).
C. Statutory Interpretation Analysis
¶23 We begin with a fundamental point about an occupational liquor tax to provide general context. This tax is not "an excise tax upon the liquor itself." Berlowitz v. Roach , 252 Wis. 61, 67, 30 N.W.2d 256 (1947) (interpreting the 1945 and 1947 versions of WIS. STAT . § 139.26 ). Instead, it is a tax on "the privilege to sell" intoxicating liquor, and applies "only to intoxicating liquor in possession of persons who are engaged in the business of selling intoxicating liquor." Id. Thus, as clearly reflected in the current statutory language, this is a tax on sales of liquor, and not a tax on liquor. See WIS. STAT . § 139.03(2m) (establishing "an occupational tax" "upon the selling of intoxicating liquor") (emphasis added).[6]
*336 ¶24 With that context in mind, we turn to the timing-of-first-sale question at the heart of the parties' statutory interpretation dispute. Using the terminology of WIS. STAT . § 139.06(1)(b), the Department contends that "the time of the first sale" of the distilled spirits at issue here-which is when "[l]iability for taxes" under WIS. STAT . § 139.03(2m)"on liquor produced or bottled in this state ... is incurred"-is when Arty's sells its products to wholesalers. See § 139.06(1)(b). Arty's disagrees, contending that it incurs "first sale" liability when Arty's purchases distilled spirits in bulk from its distiller. We agree with the Department.
¶25 Our conclusion is dictated by the unambiguous language in WIS. STAT . § 139.04(4). This language excludes from consideration all transactions between Arty's and its distiller. "No" intoxicating liquor occupational tax "is levied" "in respect to" "[s]ale or shipment of ... intoxicating liquor in bulk between manufacturers [and] rectifiers ...." See § 139.04(4). There is no dispute that Arty's purchases intoxicating liquor from a "manufacturer" of intoxicating liquor. And, as we discuss below, we agree with the Department that Arty's is a rectifier, as defined in *599 WIS. STAT . § 139.01(6). Therefore, "[n]o tax is levied" on a "sale" "between" the distiller and Arty's. In sum, the § 139.04(4) exclusion requires Arty's and the Department to ignore purchases by Arty's from its distiller and to treat sales by Arty's to wholesalers as the first sales, and therefore the taxable sales.
¶26 Arty's makes two primary contrary arguments and less significant additional arguments. The first primary argument is that Arty's is not a rectifier, *337 under any definition in WIS. STAT . § 139.01(6).[7] Arty's other primary argument is not easily summarized, but it involves the statutory terms "levied" and "imposed." We address the primary arguments, respectively, under the first two subheadings below and then, the additional lesser arguments, under a single separate subheading.
1. Arty's As Rectifier Under WIS. STAT. § 139.01(6).
¶27 Arty's contends that it is not a rectifier under any definition in WIS. STAT . § 139.01(6). We disagree, based on one definition of "rectifier," which we now repeat:
[A] person ... who after rectifying and purifying distilled spirits, by mixing such spirits or liquors with any materials, manufactures any spurious, imitation or compound liquors for sale.
WIS. STAT . § 139.01(6). We interpret this definition to include a person who does the following: (1) mixes distilled spirits with other materials, and (2) uses that mixture to manufacture, for sale, a beverage that contains distilled spirits (liquor) mixed with other ingredients. This clearly applies to what Arty's does. We now explain our interpretation of § 139.01(6).
*338 ¶28 First, on its face, the phrase "by mixing such spirits ... with any materials" supplies a definition for the otherwise potentially ambiguous preceding phrase, "rectifying and purifying distilled spirits." That is, when one mixes distilled spirits with "any materials," one is "rectifying and purifying distilled spirits." Explaining this conclusion further, WIS. STAT . § 139.01(6) provides a definition for the term "rectifier." Therefore, to avoid the circular definition problem of using a term ("rectifier") to define itself, it is logical for the legislature to include explicit guidance, within the definition of "rectifier," to explain what the phrase "rectifying and purifying" means. The meaning of the phrase "rectifying and purifying" is otherwise not immediately evident, and Arty's fails to direct us to any separate definition of "rectifying and purifying" that undermines this interpretation.[8]
¶29 Second, by its plain terms, the phrase "compound liquors" connotes liquor beverages that contain multiple elements, namely, distilled spirits plus at least one added ingredient. See Compound , MERRIAM WEBSTER ONLINE DICTIONARY , https://www.merriam-webster.com/dictionary/compound (last visited Sept. 10, 2018) (defining the adjective "compound" as "composed of or resulting from union of separate elements, ingredients , or parts.") (emphasis added). We recognize *600 that distilled spirits are themselves compounds in the sense that they are not pure alcohol (40 percent alcohol means 60 percent non-alcoholic other substances). And, to repeat, "intoxicating liquors" are defined to *339 include "distilled ... liquors, liquids, or compounds , ... containing one-half of one percent or more of alcohol by volume." WIS. STAT . § 139.01(3) (emphasis added). However, it is reasonable to speak of adding materials to a substance that is a compound in order to produce a new compound; one compound may become an element of another compound.
¶30 Arty's argues that the phrase "compound liquors" should be interpreted to mean beverages that contain multiple types of distilled spirits, such as blends of different types of scotches, and asserts that it produces no such blend. When Arty's was asked at oral argument to defend this interpretation, its only response was to argue that, because the word "liquors" in the phrase "manufactures any ... compound liquors for sale" is plural, this means that the item for sale contains more than one type of intoxicating liquor. However, we agree with the Department that the only reasonable reading is that "liquors" is plural because it follows three adjectives, not one ("spurious, imitation or compound"). Further, if the legislature had intended the narrow meaning argued by Arty's, it presumably would have conveyed that idea through a phrase such as "any ... compound of liquors," and Arty's effectively asks us to insert a term into a statute, which we cannot do. Finally on this issue, Arty's fails to explain, in the context of the applicable statutes, what the underlying logic would be in having the definition of rectifier turn on whether a liquor beverage contains more than one type of liquor.
¶31 For these reasons, we conclude that one definition of "rectifier" in WIS. STAT . § 139.01(6) includes a person, such as Arty's, who mixes distilled spirits *340 with other materials and uses that mixture to manufacture for sale a beverage that contains liquor mixed with other ingredients.
2. "Levied" Versus "Imposed"
¶32 We now turn to the second primary argument by Arty's that it should be taxed only on the volume of distilled liquor it purchases from its distiller. This argument begins with the general rule that "[w]hen the legislature uses different terms in the same act, we generally do not afford them the same meaning." See State ex rel. DNR v. Wisconsin Court of Appeals, Dist. IV , 2018 WI 25, ¶ 28, 380 Wis.2d 354, 909 N.W.2d 114. The different terms that Arty's highlights are "levied" (in the phrase "[n]o tax is levied" in WIS. STAT . § 139.04 (introduction) ) and "imposed" (in the phrase "[a]n occupational tax is imposed" in WIS. STAT . § 139.03 (introduction) ). Arty's contends that the term "levied" in the exclusions created under § 139.04(4) (introduction) signals that no taxes are collected at the time of transactions between Arty's and its distiller supplier. Instead, Arty's argues, collections of the tax, based on the Arty's-distiller transactions, are delayed until Arty's makes sales to wholesalers, which is when the taxes are actually "imposed," pursuant to § 139.03(2m), based on the earlier distiller-Arty's transaction. We reject this argument for the following reasons.[9]
*601 *341 ¶33 First, this appears to be, at best, an incomplete argument. Even if we could discern in the statutory language separate triggers for when taxes are "levied" as opposed to when they are "imposed," Arty's fails to articulate a theory as to why the times when taxes are "imposed" must be the times when taxes are collected.
¶34 Second, as the Department notes, other types of sales listed under the "exclusions" title in WIS. STAT . § 139.04 -such as the exclusions for sales of sacramental wine, see § 139.04(6), and for sales for "medicinal purposes," see § 139.04(8) -plainly establish complete and not delayed exclusions. These are presented as parallel concepts. The construction offered by Arty's fails to account for the structure of § 139.04 as a whole, which by all appearances is a list of complete exclusions. See Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110 (a statute is "interpreted in the context in which it is used; not in isolation but as part of a whole").
¶35 Third, while Arty's is correct that variations in statutory language addressing a given topic may signal differing meanings, "levied" and "imposed" are not contained in the same statute or section, where the rule of interpretation that Arty's relies on is strongest. See State ex rel. DNR , 380 Wis.2d 354, ¶ 28, 909 N.W.2d 114 (quoting Gister v. American Family Mut. Ins. Co. , 2012 WI 86, ¶ 33, 342 Wis.2d 496, 818 N.W.2d 880, for the proposition: " '[W]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings.' ").
*342 ¶36 Fourth, as the Department points out, at least one major premise of this argument is flawed. The premise is that the word "levy," as used in the phrase "[n]o tax is levied" in WIS. STAT . § 139.04 (introduction), cannot mean "imposed." However, this position finds no support in commonly accepted definitions. See Levy , MERRIAM WEBSTER ONLINE DICTIONARY , https://www.merriam-webster.com/dictionary/levy (last visited Sept. 10 2018) ("the imposition or collection of an assessment.").[10]
¶37 Fifth, and particularly in light of the four points we have already made, it would be a highly obscure drafting choice for the legislature to signal delayed collection of a category of taxes merely by using the terms "levied" and "imposed" in these separate statutes. Arty's fails to point to any term that conveys the concept of delay. We do not interpret statutes based on the assumption that they contain tortuously coded language. See Kalal , 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110 (explaining plain meaning statutory interpretation).
¶38 For these reasons, we reject Arty's argument that the term "levied" means that tax liability arises but collection is delayed.
*343 3. Additional Statutory Interpretation Arguments
¶39 Arty's correctly notes that " 'a tax cannot be imposed without clear and *602 express language for that purpose.' " Tetra Tech EC, Inc. , 382 Wis.2d 496, ¶ 103 n.53, 914 N.W.2d 21 (quoting DOR v. Milwaukee Ref. Corp. , 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977) ). However, we have explained why we conclude that clear and express language in WIS. STAT . §§ 139.03(2m), 139.06(1)(b), 139.04(4), and 139.01(6) resolves the issue against Arty's.
¶40 Arty's broadly asserts that the Department's interpretation cannot be correct, because it "subject[s] non-alcoholic substances," "substances that contain no alcohol," to the occupational tax on sales of intoxicating liquor. This amounts to a complaint about the particular choices that the legislature has made, both in defining "intoxicating liquors" to include both distilled spirits and non-alcoholic substances and in subjecting sales of intoxicating liquors to a method-of-production-based tax. It may be counterintuitive that a beverage with an alcohol content of just 0.6 percent should be defined as an "intoxicating liquor" for purposes of this tax. See WIS. STAT . §§ 125.02(8), 139.03(2m). But this is not an incoherent or irrational legislative choice.
¶41 Arty's argues that an opinion of the Wisconsin attorney general stands for the proposition that the intoxicating liquor tax applies only to the alcoholic portion of an intoxicating liquor beverage. See 68 Op. Att'y Gen. 138 (1979) (interpreting WIS. STAT . § 139.03(2m) (1975) and § 139.03(2t) (1975) ). However, the attorney general opinion is not persuasive because *344 it construed statutes that have been changed and involved entirely distinguishable facts. It is sufficient to note, as the commission observed, that Arty's argument is directly undercut by the fact that under the attorney general's approach the full amount of the beverage product at issue was taxed (albeit at varying rates, given a differential taxing formula then in place).
¶42 Arty's asserts that the statutes at issue must be ambiguous because the Department itself has demonstrated confusion about their meaning. This is illustrated, Arty's argues, by the fact that the Department "does not collect any liquor tax" on sales of bitters, which Arty's asserts are beverages with "a very high alcohol content." However, assuming without deciding that Arty's has identified confusion by the Department in enforcing the statutes, Arty's does not develop an argument explaining how this would provide support for any particular statutory interpretation argument that Arty's now makes.[11]
¶43 In a related vein, Arty's briefly asserts that, because the Department adopted a regulation, WIS. ADMIN. CODE § TAX 8.01 (June 2018), for the purpose of clarifying taxation of intoxicating liquors, that amounts to an acknowledgment of ambiguity in the statutes.[12] Again, however, Arty's fails to develop an argument explaining how anything about adoption of the regulation demonstrates ambiguity in the statutory terms.
*345 ¶44 For these reasons, we agree with the commission's statutory interpretations that the first, taxable sales of intoxicating liquors are sales by Arty's of its bottled mixtures to its customers, and that the entire volume of each bottle is an intoxicating liquor, each liter of which is subject to the intoxicating liquor occupational tax.
*603 II. EQUAL PROTECTION
¶45 Arty's argues that, if the pertinent statutes are interpreted in the manner we explain above, this creates an arbitrary and irrational classification that violates Arty's right to equal protection of the law under the federal and state constitutions.[13] More specifically, Arty's argues that there is no rational basis to justify taxing more heavily sales of low-alcohol-content beverages containing distilled spirits than sales of the same volume of low-alcohol-content beverages containing no distilled spirits. We disagree.
¶46 We first explain our standard of review and why we conclude that Arty's makes a facial constitutional challenge to the current taxation scheme. Next we summarize the standards we apply to equal protection *346 claims of the type made here, before analyzing the arguments of the parties and explaining our conclusion.[14]
A. Standard Of Review; As Applied Versus Facial Challenge
¶47 Our supreme court has explained the applicable appellate standard of review, and the distinction between "as applied" and facial constitutional challenges, as follows:
A statute's constitutionality is a question of law that this court reviews de novo. To succeed on a claim that a law is unconstitutional on its face, the challenger must demonstrate that the State cannot enforce the law under any circumstances. If the challenger *347 succeeds, then the law is void for all purposes. An as-applied challenge, in contrast, focuses on the facts of the challenger's case, and if the court determines that the law actually violates the challenger's rights, then "the operation of the law is void as to the party asserting the claim."
We presume that statutes are constitutional, and if any doubt exists about the statute's constitutionality, the court must resolve that doubt in favor of upholding the statute. A party challenging a statute overcomes the strong presumption of constitutionality only by demonstrating that the statute is unconstitutional beyond a reasonable doubt. "It is not sufficient for the challenging party merely to establish doubt about a *604 statute's constitutionality, and it is not enough to establish that a statute probably is unconstitutional."
Blake v. Jossart , 2016 WI 57, ¶¶ 26-27, 370 Wis.2d 1, 884 N.W.2d 484 (citations omitted).
¶48 Arty's submits that its challenge is "as applied," as opposed to facial. We disagree. It is a facial challenge. As discussed in more detail below, Arty's argues that the current taxation scheme, as we interpret it above, always operates unconstitutionally, because it is irrationally based on the methods of production of the sales of alcoholic beverages, as opposed to being based on the alcoholic content of the beverages. That is, Arty's argues that the only rational alcoholic beverage taxation system would be one based on the alcoholic content of the alcoholic beverage, and that it is irrational to tax beverages more heavily merely because their ingredients include distilled spirits. Thus, the remedy that Arty's seeks is invalidation of the entire current system. See Citizens United v. Federal Election Comm'n , 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (distinction *348 between as-applied and facial challenges "goes to the breadth of the remedy" sought).
¶49 In defense of its "as applied" characterization, Arty's argues as follows. If the legislature adopted an alcoholic-content-based taxation system, this would result in higher tax rates on sales of products that contain distilled spirits and that have higher alcoholic contents than wines or beers. Thus, the argument proceeds, the new taxation system would produce some outcomes that approximate outcomes under the current method-of-production-based system. We reject this argument. Even if some outcomes under a new statutory scheme might approximate current outcomes, this does not change the fact that Arty's challenges the constitutionality of the entire current system in all applications. Cf. Voters With Facts v. City of Eau Claire , 2018 WI 63, ¶¶ 60-62, 382 Wis.2d 1, 913 N.W.2d 131 (challenge under state constitution uniformity clause to certain cash grants disbursed to developers was "as applied" challenge, because it did not challenge all cash grants nor challenge all portions of statute at issue).
¶50 Summarizing, Arty's challenges the methods-of-production taxation system as facially unconstitutional in violation of the equal protection clause. Accordingly, Arty's must overcome the strong presumption that the current system is constitutional by demonstrating that it is unconstitutional beyond a reasonable doubt and cannot be enforced under any circumstances. Our review is de novo.
B. Equal Protection Standards
¶51 When a party claims an equal protection violation that does not involve a suspect class or *349 fundamental interest, as Arty's does here, we are presented with three questions: (1) does the challenged statute create distinct classes of persons?; (2) is a class treated differently from others similarly situated?; (3) is there a rational basis for different treatment? See Metropolitan Assocs. v. City of Milwaukee , 2011 WI 20, ¶ 12, 332 Wis.2d 85, 796 N.W.2d 717.
¶52 Using the three-step framework, our analysis is guided by the following principles:
"The right to equal protection does not require that ... similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made."
....
*605 Under rational basis analysis, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when enacting the provision. Therefore, the court will uphold a statute unless "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Though classifications may be imperfect and might create inequities, the court seeks to determine whether a classification rationally advances a legislative objective. To do so, the court must identify or, if necessary, construct a rationale supporting the legislature's determination. "Once the court identifies a rational basis for a statute, the court must assume the legislature passed the act on that basis...."
A legislative classification satisfies the rational basis standard if it meets the following five criteria:
"(1) All classification[s] must be based upon substantial distinctions which make one class really different from another.
*350 (2) The classification adopted must be germane to the purpose of the law.
(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class.]
(4) To whatever class a law may apply, it must apply equally to each member thereof.
(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation [being applied to each class]."
Blake , 370 Wis.2d 1, ¶¶ 30-33, 884 N.W.2d 484 (alterations in original) (citations omitted).
C. Analysis
¶53 Arty's focuses on the fact that the occupational tax on sales of intoxicating liquors is imposed on the volume of intoxicating liquor sold, without regard to the alcohol content of the beverage, except that all intoxicating liquor must be at least 0.5 percent alcohol by volume. See WIS. STAT . § 139.03(2m). Arty's argues that it is unconstitutional not to tie levels of taxation to levels of the strength of the alcohol content, that is, unconstitutional not to impose higher taxes based on higher alcohol content.
¶54 To repeat, there is no dispute that the occupational tax on sales of intoxicating liquor is higher than the equivalent tax on sales of the same volume of wine, which is higher than the equivalent tax on beer sales regardless of the alcoholic content of the respective beverage, so long as the alcoholic content *351 exceeds 0.5 percent (with a slight variation for wine, establishing two levels of alcoholic content, which does not matter to any argument either party makes). See WIS. STAT . §§ 139.03(2m) (85.86 cents per liter for intoxicating liquor), 139.03(2n) (either 6.605 or 11.89 cents per liter, depending on the alcohol content level, for wine other than cider), 139.02(1) ($2 per 31 gallons of fermented malt beverages). As Arty's points out, this means that sales of beverages that include distilled spirits "are taxed much more heavily" than sales of the same volumes of wine and beer, regardless of alcoholic content.
¶55 Against that factual background, Arty's contends that this tax scheme creates the following classifications of citizens: (1) "producers of low [alcohol] potency ... beverages made using products derived *606 from the distillation process," who pay a higher occupational tax on sales, and (2) "producers of low [alcohol] potency ... beverages made using products derived from the fermentation process," but not distillation, such as wine and beer, who pay a lower occupational tax on sales of the same volume. Arty's argues that these classifications deny it equal protection, because low-alcohol-by-volume products that contain distilled spirits are "essentially identical" to low-alcohol-by-volume wine and beer products, but nevertheless the former are taxed more heavily merely because of a difference in the method of production, and that distinction is not based on any rational legislative decision.
¶56 The Department does not dispute the first two steps of the equal protection analysis. It acknowledges that the current taxing scheme creates the distinct classifications described by Arty's and that it taxes sales of low-alcohol beverages containing distilled *352 spirits much more heavily than sales of low-alcohol beverages containing wine or beer. The Department disputes the third step, whether there is a rational basis for the different treatment. On this issue, the Department's core argument is that the current method-of-production-based system is rational because it "provides for easy administration by taxing all intoxicating liquor sales the same without needing to analyze the ingredients in each individual product sold in the state," in particular the alcohol content in each product, and that part of what makes administration easy is that it minimizes opportunities for tax cheating compared with an alcohol-content-based taxation system.
¶57 We now address the five rational-basis test factors under Blake and explain why we reject the arguments that Arty's makes regarding each.
¶58 The first factor is easily resolved. Arty's does not support its suggestion that the classification here does not involve "substantial distinctions which make one class really different from another." See Blake , 370 Wis.2d 1, ¶ 33, 884 N.W.2d 484. Arty's contends that low-alcoholic-content beverages that contain distilled spirits (e.g. , a "Brandy Old Fashioned Sweet," 6.9 percent alcohol by volume) are "virtually identical" to low-alcoholic-content beverages that do not contain distilled spirits (e.g. , a wine cooler, 6.9 percent alcohol by volume). True, these are alcoholic beverages with the same alcohol content. But the first factor asks only whether there is "really a difference" between the classes, and here that difference is the presence or absence of distilled spirits. Arty's does not suggest that it is difficult for producers, sellers, or regulators to *353 distinguish between alcoholic beverages that contain distilled spirits and those that do not. The difference is real.
¶59 Much of the argument on the constitutional issue involves the second rational-basis factor, which is whether the classification is " 'germane to the purpose of the law,' " that is, has " 'some relevance to the purpose for which classification of the classes is made.' " See id. , 370 Wis.2d 1, ¶¶ 30, 33, 884 N.W.2d 484 (quoted source omitted). We begin with purposes for the taxation scheme, and then address whether the classification Arty's challenges has some relevance to a purpose of the scheme.
¶60 Arty's argues that the legislature's only purpose in imposing the occupational taxes on sales of alcoholic beverages is to encourage temperance, and that this purpose is directly undermined when a higher alcohol content beverage is taxed more than a lower alcohol content beverage. We interpret Arty's to use the term "temperance" to mean not just abstention from drinking, but also avoidance of excessive inebriation and alcoholism, and we will follow the broader meaning in our discussion.
¶61 Arty's does not reach square one in establishing a temperance purpose, because *607 Arty's fails to direct us to any provision establishing a temperance purpose behind the tax provisions in WIS. STAT . ch. 139. Chapter 139 does not contain a statement of legislative intent. Instead, as we now explain, chapter 139 contains statutes that make clear that temperance is not a primary purpose in establishing and collecting the occupational taxes at issue here.
¶62 The tax on intoxicating liquors includes beverages that are anywhere from .5 to 100 percent alcohol. See WIS. STAT . § 139.01(3). This exceedingly *354 broad range demonstrates that the legislature has decided not to tax sales based on alcohol content. If the legislature had even a minor purpose of encouraging temperance through the use of the occupational taxes, it would presumably have taken steps to tax more heavily beverages with higher alcohol concentrations. Instead, it has swept into a single category all beverages containing distilled spirits, regardless of alcohol content, and did the same (with only a small variation regarding wine) with wine and fermented malt beverages.
¶63 Further, there is pertinent evidence in the statutes that, in contrast to temperance, germane purposes of the taxation scheme here include the efficient and effective collection of the taxes for the benefit of the public, including deterring and detecting tax cheating. We find these both in the general nature and structure of the pertinent statutes in chapter 139 and related statutes in chapter 125, and also in the "[l]egislative intent" statement in chapter 125. We have seen that chapter 125 is closely related to chapter 139 in the context of issues raised in this case. See Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110 (closely related statutes can be pertinent to interpretation).
¶64 The chapter 125 statement of intent highlights, in part, interests in "this state's economic stability," and "in efficient and effective collection of tax." See WIS. STAT. § 125.01. Granted, the latter statement is made in the specific context of face-to-face retail sales at licensed premises. It nonetheless appears to express a pertinent purpose of the legislature in connection with the overall system involving production and distribution of alcoholic beverages, including the collection of occupational taxes. It is also true that the statement of legislative intent contains a reference to *355 "the benefit of the public health and welfare," see id. , but this does not reflect a strong temperance purpose in particular.
¶65 As purported support for its temperance-purpose argument, Arty's points exclusively to a statement in the "foreword" of the state treasurer to the 1942 "Wisconsin Red Book" of "Administrative Rules and Orders." The treasurer stated in part that he "hereby adopts the following rules and regulations for the purpose of effectively insuring temperance in the consumption of liquors and wines in this state, and promoting obedience of law and order." Arty's fails to explain how the treasurer's 1942 statement establishes a single or even a primary purpose of temperance for the current occupational taxes imposed on sales of alcoholic beverages.[15]
*608 ¶66 Having determined that the taxation scheme has the purposes of advancing state "economic stability" and its "interest in efficient and effective collection of tax," we turn to the issue whether Arty's has demonstrated that the challenged classification does not have some relevance to those purposes. The Department does not offer a robust or detailed argument, *356 but it does not have to. Its argument is sufficient to satisfy the some-relevance-to-purpose standard.
¶67 The Department asserts that treating Arty's the same as a company that sells "a straight bottle of vodka or a bottle of whisky" promotes efficient and effective tax collection. That is, it is simpler, and therefore more efficient and effective, for the Department to tax sales of three classes of alcoholic beverages-intoxicating liquors, wines, and fermented malt beverages-at set rates assigned to each class, and applied to the total volumes of products sold, than it would be to require all taxpayers to report the alcohol content of each alcoholic beverage sold and then collect taxes based on self-reported alcohol content levels.
¶68 As part of this argument, the Department suggests that if the Department had to depend on self-reporting of precise alcohol content levels of all alcoholic beverages there would be room for hard-to-detect tax cheating that cannot occur, or is less likely to occur, under the current system. In contrast, the Department submits, under the current system it can easily audit data regarding the product inputs to rectifiers and manufacturers, in order to determine whether distilled spirits are ingredients and what volumes of products are being sold.
¶69 Arty's argues that we should ignore these positions of the Department, because all Wisconsin alcoholic beverage sellers are currently obligated to create and submit to federal alcohol regulators detailed alcohol-content data. However, putting aside the question of whether Arty's provided the commission with a sufficient factual record to establish this proposition, Arty's concedes that "there could be some complication" in transforming the federally required data into forms and procedures appropriate for filing state *357 occupational taxes. And, more importantly, Arty's fails to explain why the Wisconsin Legislature could not rationally weigh the risks of potential inefficiency and the potential risks of tax cheating in this context, for Wisconsin's purposes, differently than federal authorities may weigh these same considerations, for federal purposes.[16]
¶70 The third and fourth rational-basis factors are easily resolved, because Arty's does not contend that the taxation scheme here is " 'based upon existing circumstances only,' " precluding additional members in any pertinent class, or that the taxation scheme does not apply equally to each member of each pertinent class. See Blake , 370 Wis.2d 1, ¶ 33, 884 N.W.2d 484 (quoted source omitted).
¶71 The fifth rational-basis factor involves an assessment of the " 'propriety,' " in light of the public good, of using the current method-of-production-based system.
id="p609" href="#p609" data-label="609" data-citation-index="1" class="page-label">*609See id. Arty's offers no new arguments on this propriety topic. We have explained why we conclude that the Department has presented a sufficient argument that the public benefits from the efficiency and effectiveness created by the simplicity of the current taxation scheme. In particular, we note that Arty's fails to provide evidence or argument that seriously undermine the Department's plausible contention that Arty's proposed alternative taxation system would be an *358 invitation to widespread forms of tax cheating that have no current, widespread equivalents. Arty's points generally to the existence of the federal system, but fails to demonstrate that the federal system could be adapted to the context of a Wisconsin occupational alcoholic beverages taxation system without risks of inefficiency, ineffectiveness, or increased cheating.[17]
CONCLUSION
¶72 For all of these reasons, we affirm the commission's decisions on both the statutory interpretation and constitutional issues and, accordingly, affirm the circuit court's ruling regarding statutory interpretation and reverse the circuit court's ruling remanding the constitutional issue to the commission.
By the Court .-Judgment affirmed in part and reversed in part.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Science Buddies, Bring Science Home, Separation by Distillation , Scientific American (Jan. 28, 2016), https://www.scientificamerican.com/article/separation-by-distillation.

Wikipedia, Distillation , https://en.wikipedia.org/wiki/Distillation (as of Aug. 31, 2018, at 14:44 UTC).

Wikipedia, Fermentation , https://en.wikipedia.org/wiki/Fermentation (as of Aug. 22, 2018, at 06:40 UTC).

As "a matter of persuasion, not deference," we are to give "respectful," "due weight" consideration to "the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it," because "administrative agencies can sometimes bring unique insights to the matters for which they are responsible." See Wis. Stat . § 227.57(10) ; Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶ 78, 382 Wis.2d 496, 914 N.W.2d 21. However, here the Department makes no arguments based on any discretionary authority created by statute or purported unique insights.

For this reason, Arty's misses the mark at times in its briefing on appeal by calling the intoxicating liquor occupational tax an "excise tax imposed upon the production of intoxicating liquor" and "Wisconsin's liquor tax."

By the time of oral argument, Arty's took the position that it is a rectifier under one definition of rectifier contained in Wis. Stat . § 125.02(16) (namely under paragraph (e), addressing bottling activity), but that it is not a rectifier under the definition in Wis. Stat . § 139.01(6) that we have isolated in the text. However, Arty's concession about § 125.02(16)(e) does not matter to any issue we resolve.

Arty's asserts that "purifying" should be interpreted to mean adding water to a substance as part of the distillation process. However, Arty's provides no support for this assertion, which runs contrary to our statutory language analysis in the text.

Arty's suggests that another provision somehow enhances its levied-versus-imposed argument, but we cannot track this additional argument. Arty's suggestion is based on Wis. Stat . § 139.06(1)(b), which directs that "[l]iability for taxes at the rates under [ Wis. Stat .] s. 139.03(2m) on intoxicating liquor is ... incurred when a Wisconsin permittee receives that liquor." Despite our invitation at oral argument for Arty's to clarify, we are not able discern what § 139.06(1)(b) might add to the analysis. We address this topic no further.

Arty's briefly alludes to language in Chicago & N. W. Ry. Co. v. Forest County , 95 Wis. 80, 87, 70 N.W. 77 (1897), which notes that "levy" has been interpreted to mean "collect." However, after the Department distinguishes Forest County , in part on the ground that it does not purport to provide a general definition of "levy," Arty's has no counter in its reply, implicitly conceding the point. See United Co-op. v. Frontier FS Co-op. , 2007 WI App 197, ¶ 39, 304 Wis.2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

Arty's clarified at oral argument that its references to allegedly uncollected taxes on bitters are part of its statutory interpretation argument only, and play no role in its constitutional argument.

Neither side suggests that the content of Wis. Admin. Code § Tax 8.01 (June 2018) matters to the statutory interpretation or constitutional issues in this case.

We treat as consistent with each other (1) the federal provision prohibiting states from "depriv[ing] any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. , 14th Amend., § 1, and (2) the state provision guaranteeing that "[a]ll people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness," Wis. Const. , Art. I, § 1. Blake v. Jossart , 2016 WI 57, ¶ 28 n.15, 370 Wis.2d 1, 884 N.W.2d 484.

The circuit court remanded the constitutional issue on the ground that it was not sufficiently developed. However, the circuit court failed to identify a basis specified in Wis. Stat. § 227.57 justifying remand, Arty's provides no such basis, and we discern none. See Hutson v. State of Wis. Pers. Comm. , 2003 WI 97, ¶ 59, 263 Wis.2d 612, 665 N.W.2d 212 ("We agree with the Commission's argument that Wis. Stat. § 227.57(4) only allows remand in the event that an appellate court finds 'that either the fairness of the proceedings or the correctness of the action has been impaired by a material error in procedure or a failure to follow prescribed procedure.' ") (quoted source omitted).
Separately, we reject an argument in the Arty's cross appeal that is based on an inaccurate assertion that "the Department argued [to the circuit court] that the trial court should remand" the constitutional issue to the commission. This argument is frivolous. As plainly reflected in the pertinent pleading, after arguing the merits of the constitutional issue, the Department merely stated that, if the court disagreed with the Department on the constitutional issue, the appropriate remedy would be remand, because the commission had resolved the issue on summary judgment.

Our conclusion that one purpose of the challenged taxation scheme is efficient and effective collection of taxes, including avoiding tax cheating, readily distinguishes an Illinois supreme court case on which Arty's heavily replies as persuasive authority. See Federated Distributors, Inc. v. Johnson , 125 Ill.2d 1, 125 Ill.Dec. 343, 530 N.E.2d 501 (1988) (interpreting the uniformity provision of the Illinois Constitution to preclude differential tax rates for beverages containing distilled spirits versus wine). Putting aside other potentially distinguishing features of the Illinois opinion, the court expressly based its decision on the fact that "the very purpose" of the act at issue, the Illinois Liquor Control Act of 1934, was "to promote temperance in the consumption of alcohol." Id. , 125 Ill.Dec. 343, 530 N.E.2d at 510.

Arty's makes no specific argument challenging the categorization of alcoholic beverages into the classes of intoxicating liquor, wine, and fermented malt beverages for purposes of the occupational tax. Instead, it argues generally that the legislature must peg tax rates directly to levels of alcoholic content. Arty's has the burden of showing unconstitutionality beyond a reasonable doubt and we do not address the specific categorization topic further.

At oral argument, the Department attempted to articulate additional, non-speculative rationales for the current taxing scheme, aside from efficient and effective collection of taxes, including avoiding cheating. We struggled to understand aspects of these alternative arguments, but we have addressed only rationales that we consider sufficient.